# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-CA-00049-SCT

*UNITED SERVICES AUTOMOBILE
ASSOCIATION*

*v.*

*ESTATE OF SYLVIA F. MINOR, KATHRYN
MINOR AND STEPHEN MINOR*


| | |
|---|---|
| DATE OF JUDGMENT: | 10/03/2022 |
| TRIAL JUDGE: | HON. FORREST A. JOHNSON, JR. |
| TRIAL COURT ATTORNEYS: | GERALD MAPLES |
| | CHUCK McRAE |
| | OLIVER E. DIAZ, JR. |
| | WALKER REECE GIBSON |
| | CARL DWIGHT CAMPBELL, III |
| | JAMES NELSON SCARFF, II |
| | LAUREN RUTH HILLERY |
| | JAMES R. REEVES, JR. |
| | DAVID WAYNE BARIA |
| | MICHAEL JAMES BENTLEY |
| | TIMOTHY JOHN STERLING |
| | CHARLES G. COPELAND |
| | REBECCA SUZANNE BLUNDEN |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MICHAEL JAMES BENTLEY |
| | CHARLES G. COPELAND |
| | REBECCA SUZANNE BLUNDEN |
| | JAMES STEPHEN FRITZ, JR. |
| ATTORNEYS FOR APPELLEES: | DAVID WAYNE BARIA |
| | JAMES R. REEVES, JR. |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | ON DIRECT APPEAL: AFFIRMED. ON CROSS-APPEAL: REVERSED AND RENDERED - 12/05/2024 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**ISHEE, JUSTICE, FOR THE COURT:**

¶1.     Hurricane Katrina destroyed Paul and Sylvia Minor's home on August 29, 2005. The Minors had a homeowner's insurance policy with United Services Automobile Association (USAA). The USAA policy covered damage caused by wind but excluded damage caused by storm surge or flood. The Minors reported their loss with USAA, which resulted in a years-long coverage dispute. USAA ultimately issued payments for damage it concluded was caused by wind but not for damage it concluded was caused by storm surge or flood. The Minors maintained that they suffered a total loss caused by wind and demanded that USAA pay the policy limits. The case proceeded to trial in 2013, and the jury awarded the Minors $1,547,293.37 in compensatory damages.

¶2.     The Minor Estate subsequently appealed a pretrial order granting partial summary judgment to USAA on the Minors' bad faith claim.[1]     *See **Est. of Minor v. United Servs. Auto. Ass'n**,* 247 So. 3d 1266 (Miss. Ct. App. 2017). The Court of Appeals held that the trial court committed reversible error by granting USAA's motion for partial summary judgment and dismissing the Minors' claim for punitive and extra-contractual damages before trial. *Id.* at 1274. Thus, the Court of Appeals remanded the case for further proceedings exclusively on the Minors' bad faith claim. *Id.* Notably, the Court of Appeals did not find that the Minors were entitled to present their claims for punitive or extra-contractual damages

_____

[1] Sylvia Minor died in 2009. Sylvia Minor's Estate, including the USAA insurance claim, went to her two adult children Kathryn and Stephen.

2

to a jury. *Id.* The Court of Appeals instead found "that there was a genuine issue of material fact in dispute and that USAA was not entitled to a judgment as a matter of law on this issue before trial." *Id.*

¶3.     On remand, the issue was ultimately presented to a jury. The jury awarded the Minors $10,000,000 in punitive damages and $457,858.89 in extra-contractual damages (solely attorneys' fees).  USAA now appeals, raising several assignments of error. The Minor Estate cross-appeals the trial court's denial of its post-trial motion for attorneys' fees.

¶4.     Upon review, we find no reversible error and affirm the jury's award of $10,457,858.89 in damages.  As for the Minor Estate's cross-appeal, we reverse and render attorneys' fees on behalf of the Estate in the amount of $4,500,000, plus post-judgment interest at an annual rate of 4 percent from October 3, 2022, the date of judgment, until paid.

## FACTS AND PROCEDURAL HISTORY

### *USAA's Investigation Following the Minors' Reported Loss*

¶5.     The Minors had a homeowner's insurance policy with USAA when Hurricane Katrina destroyed their home in 2005.  Before Hurricane Katrina, USAA had sent underwriters to the Minors' home—once in 1994 and again in 2001.  The underwriting file included a diagram of the home, exterior and interior photos, and a summary of the home's features and conditions.  The Minors' underwriting file was stored in hard copy at USAA's records center in Tampa, Florida.

¶6.     The USAA policy in effect in 2005 covered damage caused by wind but excluded damage caused by storm surge or flood.  The policy provided coverage limits for a house

($1,028,000); boathouse and shed ($102,800); guest cottage ($108,000); detached carport ($41,000); personal property ($771,000); refrigerated products ($500); and jewelry, watches, furs, and silverware ($4,000).

¶7.     The Minors reported their loss on January 16, 2006. USAA adjuster Teri Bergstrom was initially assigned to adjust the property claim. USAA adjuster Amelia Key was assigned to adjust the contents loss. On January 24, 2006, Bergstrom informed the Minors that USAA would be sending a reservation of rights letter for the Minors' late reporting.

¶8.     On January 24, 2006, Bergstrom and Key inspected the site and determined that the insured property was a total loss. USAA hired Project Time & Cost (PTC) Forensic Consulting, an independent engineering firm, to inspect the structure to determine the extent of damage as a result of Hurricane Katrina's storm surge or winds or both. An engineer inspected the site on January 26, 2006. He issued a report on March 2, 2006. The report stated, in relevant part:

> [I]t is PTC's professional opinion that the following components of the structure would have experienced wind-related damage as a result of the estimated wind speeds of greater than 110 miles per hour: the composition shingles; canopies and/or overhangs; trim material; window systems; and soffit and fascia material around the eaves of the structure.

Further, the report stated that, based on the location of the home, "the remainder of the structure could not have withstood the estimated 10[-]foot storm surge and as such the remainder of the structure would have been completely destroyed as a result of the storm surge."[2] Bergstrom received the report and called the engineer for further clarification.

---

[2] The record contains a document labeled "Elevation Certificate." The document is dated April 13, 2006, and states that the Minors' home was elevated at fifteen feet, which

4

¶9.     Bergstrom, Key, and other adjusters documented their work and interactions with USAA members, including the Minors, in USAA's online documentation system—the Information Management System (IMS).  On March 20, 2006, Key emailed Bergstrom and asked if "unscheduled personal property" (UPP)  should be given consideration.  Notably, this is the only USAA document that is marked "confidential," and it was not contained in the paper-claims file or the IMS file.

¶10.    In reply to Key's email, Bergstrom stated:

> I contacted the engineer and asked what he meant by "window systems" and it basically makes us accountable to replace all the windows on this portion of the home. I asked if he only meant he [sic] windward side and he stated no. Therefore, how I see it, if we are paying for all the windows, I feel it opens up contents in all the rooms [with] windows. You may want to discuss this [with] your [team leader] - as it is ultimately your call. If you need anything else—let me know.

Key emailed Bergstrom and thanked her, and Bergstrom responded, "You know he still won't be happy [with] that."

¶11.    USAA did not make an offer to the Minors for wind damage to structures based on the information developed as of March 2, 2006.  Nor did USAA make an offer for the Minors' contents loss.  Bergstrom did, however, offer to pay the undisputed amount of the claims, but Paul Minor declined, telling Bergstrom, "it is all disputed."  Bergstrom requested that the Minors provide photographs and diagrams of the structures—documents USAA

---

would have positioned it above the storm surge. The Minors attempted to introduce this document as evidence in the 2013 trial, but USAA objected to the document as hearsay. The court sustained the objection and marked the document for identification only.  There was conflicting testimony in the 2013 trial as to the height of the storm surge (as high as twenty-one feet).

already had in its underwriting file.

¶12.    On June 18, 2006, USAA adjuster Rob Brooks sent a letter to the Minors with an estimate of structure damage and a check for $37,245.86 comprised of: (1) $35,245.86 for property ($7,448.77 dwelling + $48,397.09 other structures = $55,845.86 - $20,600 deductible), plus (2) $2,000 for additional living expenses.  Brooks's letter appears inconsistent with the engineer's findings in the March 2, 2006, report and the engineer's explanation to Bergstrom about the "window systems":

> The engineer's report and our inspection of the damages will not warrant any additional claim under the "additional living expenses" coverage as the wind damages alone would not have rendered the home "untenable."
>
> . . . .
>
> Based upon the engineer's report [USAA] will only be able to consider contents on the southern elevation of the main dwelling and [g]uesthouse.

¶13.    On September 13, 2006, USAA adjuster Will Carraway and his supervisor Gary Taylor inspected the home site.  On September 15, 2006, Carraway wrote a letter to the Minors asking for diagrams and photos of the insured property.  On December 5, 2006, the Minors informed Carraway that USAA already had possession of photos and diagrams of the home and contents by virtue of the underwriting file from two previous inspections in 1994 and 2001.  Carraway eventually requested the underwriting file in January 2007.

¶14.    In January 2007, USAA Catastrophe Site Manager Jim Burke was the supervisor over four hundred USAA adjusters.  On January 15, 2007, Burke saw a note about the Minor claim and sent an email to Taylor and Carraway telling them "to get this file moving. It's a $1 [million] home and it's gone."  That same day Carraway reported that he needed to

6

discuss the possible damage to "window systems" with the engineer. Taylor reported that he needed "further clarification in writing from the engineer" before completing a new estimate, so he called the engineer and requested a supplemental report.

¶15. PTC's supplemental report concluded that the "window systems were likely damaged by flood" but could not "rule out damage by wind borne debris prior to the surge." On March 7, 2007, Carraway completed a new revised estimate, and USAA approved a gross estimate of $288,719.39 in wind-related damages to the home itself, which was reduced to an actual loss of $201,771.62 after accounting for depreciation and the policy deductible amount ($20,560). This revised estimate was based on the underwriting files that USAA had in its possession. USAA issued a supplemental check of $194,322.85 for the dwelling claim to the Minors on March 29, 2007. At that time, USAA still had not made an offer for following items insured under the policy: (1) contents, (2) boathouse and pier, (3) jewelry, (4) fur, and (5) refrigerated products. USAA's first offer on any of these items was in 2013.

### The Minors' 2008 Lawsuit

¶16. On August 14, 2008, the Minors filed a complaint in the Circuit Court of Jackson County. The complaint alleged breach of contract and that USAA engaged in bad faith in handling the Minors' insurance claim. The Minors therefore asked for "monetary damages for all losses incurred," as well as punitive and extra-contractual damages. In 2009, the Minors provided a contents list that USAA claimed it needed to prepare an estimate of the contents loss. On March 1, 2013, USAA finalized the contents adjustment and issued a check for $67,864.23. This was the first time USAA offered to pay anything toward the

contents claim.

¶17.   On August 9, 2013, the trial court granted partial summary judgment in favor of USAA on the Minors' bad faith claims for extra-contractual and punitive damages.  The breach-of-contract claims were tried in September 2013, and the jury awarded the Minor Estate and Paul Minor $1,547,293.37 in contract damages.  USAA paid the judgment and did not appeal the jury's verdict.

### The Minors' Appeal

¶18.   The Minor Estate appealed the trial court's grant of partial summary judgment in favor of USAA. The Court of Appeals ultimately reversed the trial court's judgment.  *Est. of Minor*, 247 So. 3d at 1279.  The court based its decision, in part, on the fact that:

> From the time the claim was initiated, USAA had in its possession the 1994 and 2001 inspections and appraisal reports that established and set the value of the structures and contents; along with detailed diagrams showing square footage of the home, guest house and other structures; in addition to the numerous photographs of these buildings showing the location of all windows (approximately 90) and the unique floor-to-ceiling glass doors and windows that are 360 degrees around the house.  Included in the appraisal reports were numerous photographs that depicted the Minors' personal contents located in every room in the house and "special features" that discussed the high quality of their personal property, i.e., "antique rugs throughout the home"; "special marble"; "fine arts and expensive jewelry"; and "a collection of fine wine" in the wine cellar.

*Id.* at 1273.  The court agreed with the Minor Estate's argument that this information was at all times available to USAA, as it was part of USAA's corporate records.  *Id.* at 1272.

¶19.   The Court of Appeals also referred to the evidence that USAA had an engineer's report from March 2006 that "put USAA on notice that all the window systems had been damaged by the wind forces of Katrina, along with [Bergstrom's] 'confidential' conclusion

8

that this report makes USAA 'accountable to replace all the windows and opens' up payment for 'contents in all the rooms (the entire house) with windows[,]'" which meant "USAA was accountable to pay for the losses to contents in the entire home." *Id.* at 1273. "Yet USAA did not make a payment for loss of contents for almost four years, until May 2013, approximately three months before the commencement of the trial, and for only $67,864.23."

*Id.* The court continued:

> There was also evidence that there is a genuine issue as to a material fact in dispute as to why USAA told the Minors, in a letter dated June 18, 2006, that "based on its engineer report" USAA would only consider payment for contents on the southern elevation, when the engineer and the USAA adjuster had said the insurance company was accountable for contents in all of the rooms.

*Id.*

¶20.    For these reasons, the Court of Appeals found that the "evidence was sufficient to conclude that there was a genuine issue of a material fact in dispute as to whether USAA had an arguable and legitimate basis to deny or delay payment to the Minors." *Id.* at 1273. The Court of Appeals also found there was a genuine issue of material fact in relation to the damage caused by the storm surge, stating that "there was conflicting evidence as to the height of storm surge and whether there was a legitimate or arguable basis for USAA to determine that a storm surge caused or contributed to the destruction of the residence." *Id.* at 1274.

¶21.    In reversing the trial court's grant of partial summary judgment, the Court of Appeals emphasized that its findings did not entitle the Minors to present their claims for punitive or extra-contractual damages to a jury. The court instead found that "there was a genuine issue

9

of material fact in dispute and that USAA was not entitled to a judgment as a matter of law on this issue before trial." ***Id.***

¶22. This Court denied USAA's petition for writ of certiorari. ***Minor v. United Servs. Auto. Ass'n***, 247 So. 3d 1265 (Miss. 2018) (table).

### The Second Trial

¶23. On September 11, 2022, the remanded case went to trial in the Circuit Court of Jackson County. The trial judge limited the Minor Estate's proof at trial only to those issues that related to whether USAA had an arguable basis for its claims decisions.

¶24. At trial, the Minor Estate called by deposition USAA employees involved in the adjustment of the claim as adverse witnesses. Stephen Minor's 2013 trial testimony about the home's location and details was read to jurors. Sherry Conquest, USAA's representative at trial, was the only live witness. During her testimony, the Minor Estate showed Conquest a copy of the "2021 Annual Report to Members" from USAA's chief executive officer, which had been previously admitted into evidence. The report listed USAA's net worth at $40 billion.

¶25. To establish its bad faith claim, the Minor Estate introduced various USAA documents, including (1) portions of the USAA underwriting file; (2) the confidential email regarding (a) the engineer's March 2006 findings and (b) Bergstrom's conclusion that USAA would be responsible for paying for all the windows and the contents in rooms with windows; and (3) Brooks's subsequent letter to the Minors in June 2006 indicating the majority of damage was due to flooding. To establish extra-contractual damages, the Minor

10

Estate offered a "Settlement Statement" executed by the Minor Estate and its prior counsel, which stated that a 30 percent contingency fee plus expenses had been paid by the Estate after the first trial.

¶26. At the close of the Minor Estate's case, the trial court denied USAA's motion for directed verdict and ruled that, if "consider[ed] in the light most favorable to the plaintiff," certain evidence could support a jury verdict on the Minors' bad faith claims. The court later instructed jurors, over USAA's objection, that USAA was "charged with knowledge of the entire contents of these and all other files in its possession," including the stored paper underwriting files.

¶27. The jury returned a verdict of $10 million in punitive damages and $457,858.89 in extra-contractual damages (solely attorneys' fees). The trial court entered a final judgment and denied USAA's post-trial motions for judgment as a matter of law, a new trial, and remittitur. The court also denied the Minor Estate's post-trial motion for attorneys' fees and costs for the second trial. USAA appealed the judgment and the denial of its post-trial motions. The Minor Estate cross-appealed the order denying attorneys' fees and costs.

**STANDARD OF REVIEW**

¶28. USAA appeals the denial of its motion for judgment as a matter of law, which this Court reviews de novo. *United Servs. Auto. Ass'n v. Lisanby*, 47 So. 3d 1172, 1176 (Miss. 2010). The appeal also presents questions regarding the proper interpretation of Mississippi Code Section 11-1-65 (Rev. 2019)—Mississippi's punitive damages statute. Statutory interpretation is a matter of law, which this Court reviews de novo. *Lee v. State Farm Mut.*

11

*Auto. Ins. Co.*, 355 So. 3d 229, 231 (Miss. 2023).

¶29. USAA also appeals the denial of its motions for new trial and remittitur, which are reviewed for an abuse of discretion. *Lisanby*, 47 So. 3d at 1176; *Entergy Miss., Inc. v. Bolden*, 854 So. 2d 1051, 1058 (Miss. 2003). Both parties challenge the court's rulings related to attorneys' fees.[3] A trial court has broad discretion when ruling on a request for attorneys' fees, and its decision will be reversed only if it is a "manifest abuse of discretion[.]" *Bay Point Props., Inc. v. Miss. Transp. Comm'n*, 304 So. 3d 606, 608 (Miss. 2020) (quoting *Mauck v. Columbus Hotel Co.*, 741 So. 2d 259, 269 (Miss. 1999)).

**DISCUSSION**

**1.     Whether the court erred as a matter of law by submitting the issue of punitive damages to the jury.**

¶30. USAA asks this Court to reverse the jury's award of $10 million in punitive damages. Ordinarily, the jury's verdict would receive deference. *Lisanby*, 47 So. 3d at 1176. But this trial solely on the issue of bad faith presents a unique situation in which the trial court must first make a determination on whether punitive damages may be considered by a jury. *See* Miss. Code Ann. § 11-1-65(1)(a) (Rev. 2019). The fundamental issue at trial, and on appeal, is whether the trial court erred as a matter of law by allowing the jury to consider  (1) whether USAA lacked an arguable basis for its claim decisions, and (2) whether USAA acted with gross and reckless disregard for the Minor Estate's rights. *Jenkins v. Ohio Cas. Ins.*

---

[3] Specifically, USAA challenges the court's decision to submit an instruction to the jury stating that it must accept as true that the Minor Estate paid $457,858.89 in attorneys' fees. The Minor Estate cross-appeals the court's denial of its post-trial motion for $4,708,452.92 in attorneys' fees.

12

***Co.***, 794 So. 2d 228, 232-33 (Miss. 2001). This is a legal question subject to de novo review. ***Id.***

¶31. When an insured makes a claim against his policy, the insurer must perform a "prompt and adequate investigation and make a reasonable, good faith decision based on that investigation." ***Hoover v. United Servs. Auto. Ass'n***, 125 So. 3d 636, 642 (Miss. 2013) (internal quotation mark omitted) (quoting ***Broussard v. State Farm Fire & Cas. Co.***, 523 F.3d 618, 627-28 (5th Cir. 2008)). To prevail on a bad faith claim, a plaintiff carries the "heavy burden" to prove that his insurer lacked any arguable basis for its decision. ***Lisanby***, 47 So. 3d at 1178 (internal quotation mark omitted) (quoting ***Windmon v. Marshall***, 926 So. 2d 867, 872 (Miss. 2006)). Stated differently, the plaintiff must prove by clear and convincing evidence that the defendant "acted with actual malice, gross negligence which evidences a wilful, wanton or reckless disregard for the safety of others, or committed actual fraud." Miss. Code Ann. § 11-1-65(1)(a) (Rev. 2019).

¶32. The appropriate inquiry is whether a proper investigation by USAA would have easily revealed that the Minor Estate's claims for losses to its dwelling, other structures, boat house and pier, contents, jewelry, furs, and refrigerated products should have been timely paid.

> If the trial judge determines that as a matter of law it cannot hold that the insurer had a legitimate and arguable defensive position, but that the evidence constituted disputed facts as to whether such situation existed, the trial judge should submit the arguable basis and punitive damages issues to the jury.

***Stewart v. Gulf Guar. Life Ins. Co.***, 846 So. 2d 192, 200 (Miss. 2002) (citing ***Andrew Jackson Life Ins. Co. v. Williams***, 566 So. 2d 1172, 1185 (Miss. 1990)). In other words, "[t]he jury should be allowed to consider the issue of punitive damages if the trial judge

13

determined under the totality of the circumstances and in light of defendant's aggregate conduct, that a reasonable, hypothetical juror could have identified either malice or gross disregard to the rights of others." ***T.C.B. Constr. Co. v. W. C. Fore Trucking, Inc.***, 134 So. 3d 701, 704 (Miss. 2013) (internal quotation marks omitted) (quoting ***Paracelsus Health Care Corp. v. Willard***, 754 So. 2d 437, 442 (Miss. 1999), *abrogated on other grounds by* ***Cmty. Care Ctr. of Aberdeen v. Barrentine***, 160 So. 3d 216 (Miss. 2015)).

¶33. Here, there are certainly disputed facts as to whether USAA had a legitimate and arguable defensive position. Further, the Minor Estate presented sufficient evidence that a reasonable, hypothetical juror could find by clear and convincing evidence that USAA's conduct in delaying and denying the Estate's insurance claim was done with reckless disregard to the Estate's rights. For example, the March 2, 2006, engineering report stated that the following components of the structure "experienced wind-related damage as a result of the estimated wind speeds of greater than 110 miles per hour: the composition shingles; canopies and/or overhangs; trim material; window systems; and soffit and fascia material around the carves of the structure." Bergstrom asked the engineer for clarification on the meaning of "window systems." Upon receiving clarification, Bergstrom sent Key an email marked "confidential" and stated that, under the engineer's interpretation, USAA was accountable to replace all the windows and the contents in the rooms with windows. Bergstrom suggested that Key discuss the issue with her team leader. Key thanked Bergstrom, and Bergstrom responded, "You know he still won't be happy [with] that." Although USAA had a report stating the extent of wind damage, USAA did not make an

14

offer to the Minors for wind damage to the structure.

¶34. USAA claims that the "confidential" email designation was a standard customer-privacy practice when the homeowner's name and member number appeared together. USAA also claims that the "he" in the subject of email Bergstrom sent to Key was a reference to Paul Minor and not Key's team leader. We find that those were appropriate considerations for the jury.

¶35. On June 18, 2006, Brooks sent a letter to the Minors with an estimate of structural damage. However, Brooks's letter seemingly contradicted the previous engineer's findings in the March 2, 2006, report and the engineer's explanation to Bergstrom about the extent of damage to the window systems. Burke, USAA's catastrophe site manager, agreed that Brooks's letter to the Minors contradicted the engineer's actual findings and testified: "I wouldn't agree with what he said." Burke specifically stated that Brooks's adjustment of the claim failed to account for wind damage to all the window systems. USAA requested a supplemental engineering report on January 26, 2007. USAA received that report on or about February 20, 2007. According to USAA's records, the supplemental report concluded that the "window systems were likely damaged by flood."

¶36. The evidence also shows that USAA performed two separate underwriting inspections of the Minor Estate's property—once in 1994 and again in 2001. Neither party disputes that a hard copy of the underwriting file was located at a warehouse in Tampa, Florida. During these inspections, the underwriter collected photographs and diagrams of the insured property. Even so, after the Minors' home was destroyed, USAA did not make an offer for

15

their contents' loss. Instead, USAA continued to ask the Minors for a list of contents. USAA claimed its adjusters were unaware of the underwriting file until December 2006, when Paul Minor informed USAA about the files. USAA also claimed its adjusters did not know about the underwriting file and would only request the underwriting file if someone, like the insured, brought it to their attention. Even after being told that the underwriting files existed, the USAA adjuster took more than a month to request the information from underwriting. At the same time, Burke noticed the delay on the Minors' claim and informed the adjuster that this was a $1 million claim and that he needed to "get this file moving." USAA eventually used the underwriting files to prepare an estimate of the Minors' losses.

¶37. "Punitive damages are considered an 'extraordinary remedy' and should be awarded 'with caution and within narrow limits.'" *Gonzalez v. Coastal Indus. Contractors, Inc.*, 316 So. 3d 612, 618 (Miss. 2021) (quoting *Bradfield v. Schwartz*, 936 So. 2d 931, 936 (Miss. 2006)). We find that the evidence presented at trial demonstrates a type of conduct for which punitive damages are designed. The Minor Estate provided sufficient proof that USAA acted in bad faith, with complete disregard for the Estate's rights. The evidence presented at trial revealed that USAA wished to reap the benefits of the insurance policy premiums while depriving the Minor Estate the full benefits of that policy. Based on the evidence, a reasonable, hypothetical juror could find that USAA had breached its contract with reckless disregard for the Estate's rights. Thus, we find the trial court did not err by submitting the issue of punitive damages to the jury.

2. **Whether the jury award of $457,858.89 in extra-contractual damages (attorneys' fees) should be reversed and rendered.**

16

¶38.    USAA also argues that this Court should reverse the jury award of $457,858.89 in

extra-contractual damages in the form of attorneys' fees.[4]   "[A]ttorney's fees are a special

remedy available only when expressly provided for in either a statute or contract, or when

there is sufficient proof to award punitive damages." ***Falkner v. Stubbs***, 121 So. 3d 899, 903

(Miss. 2013) (citing ***Stanton & Assocs., Inc. v. Bryant Constr. Co., Inc.***, 464 So. 2d 499,

502 (Miss. 1985)). "The fixing of reasonable attorneys' fees is a matter ordinarily within the

sound discretion of the trial court . . . ." ***Gilchrist Tractor Co. v. Stribling***, 192 So. 2d 409,

---

[4] Justice Griffis claims that the trial court's decision to submit extra-contractual damages and punitive damages to the jury is reversible error.  In doing so, he relies on ***Fulton v. Mississippi Farm Bureau Casualty Insurance Co.***, 105 So. 3d 284, 289 (Miss. 2012), to support his argument that these two are mutually exclusive.  In ***Fulton***, this Court stated that "[e]xtra[-]contractual damages are awarded when punitive damages are not . . . ." ***Id.*** (citing ***Universal Life Co. v. Veasley***, 610 So. 2d 290, 295 (Miss. 1992)).  Specifically, the ***Veasley*** Court stated that "[s]ome justices on this court have suggested that extra-contractual damages out to be awarded in cases involving a failure to pay on an insurance contract without an arguable reason even where the circumstances are not such that punitive damages are proper."  ***Veasley***, 610 So. 2d at 295 (citing ***Pioneer Life Ins. Co. of Ill. v. Moss***, 513 So. 2d 927, 932 (Miss. 1987)).  ***Veasley*** did not unequivocally state that a jury cannot award both extra-contractual and punitive damages, and that was not an issue on appeal in ***Fulton***. Justice Griffis fails to cite any case in which this Court has reversed a trial court's decision to submit both of those issues to a jury.  Notably, in ***Veasley***, a jury awarded both extra-contractual and punitive damages, albeit that issue was not on appeal.  610 So. 2d at 295.  Equally important, USAA did not make this argument at the trial level or on appeal. USAA's issue with submitting extra-contractual damages (in the form of attorneys' fees) to the jury solely pertained to the ***McKee*** factors and the credibility of the Settlement Statement. ***See McKee v. McKee***, 418 So. 2d 764 (Miss. 1982).  This Court has held that "when a jury instruction is offered at trial, it is the duty of the opposing party, in order to preserve this point for appeal, to state a contemporaneous objection in specific terms so that the trial court has an opportunity to correct any mistake." ***Solanki v. Ervin***, 21 So. 3d 552, 561 (Miss. 2009) (internal quotation marks omitted) (quoting ***Young v. Robinson***, 538 So. 2d 781, 783 (Miss. 1989)).  USAA never argued that the court was in error for submitting both extra-contractual damages and punitive damages to the jury.  Further, after the court entered a final judgment awarding the Minor Estate extra-contractual and punitive damages, USAA did not argue at the trial level (or on appeal) that the court was in error for upholding both of the jury's awards.

418 (Miss. 1966).

¶39. On remand, the Minor Estate sought extra-contractual damages in the form of attorneys' fees from the first trial. In support of its request, the Minor Estate submitted a two-page Settlement Statement between the Minors and their prior counsel, which referenced a 30 percent contingency fee. The Settlement Statement listed the undisputed amount of attorneys' fees incurred from the first trial, which totaled $457,858.89. This included fees incurred by Chuck McRae ($152,619.97), Oliver Diaz ($152,619.96), and Gerald Maples. USAA objected to the fee request, arguing that the Estate had not responded to discovery and that it failed to present admissible evidence to support a fee award. In his bench ruling, the trial judge stated:

> First of all, on these type of attorney's fees, the Court is satisfied that it is a proper element of the attorney's fees in the first case to submit that issue for the jury's determination where they can consider awarding that in this case. The Court is going to go by page 2 of [the Settlement Statement], which has been signed by the attorneys—or it's been signed by Stephen Minor, Chuck McRae, and Oliver Diaz . . . . The Court is going to allow you to submit the amount of $457,959.89, which is what [the Settlement Statement] states was the undisputed . . . .

¶40. On appeal, USAA claims that the extra-contractual damages award, which consists of $457,858.89 in attorneys' fees, was neither supported by admissible evidence nor scrutinized for reasonableness under Mississippi Rule of Professional Conduct 1.5. This Rule provides in pertinent part:

(a)  A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

   (1)  the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform

18

the legal service properly;

(2)     the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3)     the fee customarily charged in the locality for similar legal services;

(4)     the amount involved and the results obtained;

(5)     the time limitations imposed by the client or by the circumstances;

(6)     the nature and length of the professional relationship with the client;

(7)     the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8)     whether the fee is fixed or contingent.

Miss. R. Pro. Conduct 1.5.  These factors are also referred to as the *McKee*, 418 So. 2d 764, factors.[5]  Mississippi case law is scarce on this specific issue.  There is no Mississippi case directly dealing with *McKee* factors and whether those apply to extra-contractual damages in the form of attorneys' fees in insurance cases.  Here, although the record indicates that the trial judge did not perform a *McKee* analysis, the trial judge clearly analyzed the Settlement Statement that specified the thirty-percent contingency fee and ultimately decided as the fact-finder that a reasonable fee was $457.858.89 (30 percent of the compensatory damages awarded in the first trial).  Even assuming for argument's sake that the *McKee* factors apply,

---

[5] USAA additionally argues that no details were provided on the hours worked or the rates charged.  Because the attorneys took this case on contingency, they would not be required to keep detailed time records.  *See Gillies v. Gillies (In re Est. of Gillies)*, 830 So. 2d 640, 645-46 (Miss. 2002).

the absence of a *McKee* analysis does not always amount to reversible error. *See West v. West*, 88 So. 3d 735, 747 (Miss. 2012). Rather, the award may be upheld so long as the amount is "not unreasonable." *Id.*

¶41.    A trial court may award attorneys' fees "based on the information already before it and the court's own opinion based on experience and observation." Miss. Code Ann. § 9-1-41 (Rev. 2019). Justice Griffis correctly states that the trial court did not award the attorneys' fees in this case, but we still find this Section applicable in this specific instance.[6] Before submitting this issue to a jury, the trial court must first determine whether the fee is reasonable. *See* Miss. Code Ann. § 9-1-41 (Rev. 2019). Here, the Minor Estate entered into an oral contract with attorneys Gerald Maples, Chuck McRae, and Oliver Diaz. The Minors filed their complaint in 2008 and went to trial in 2013. The Estate agreed to pay the attorneys a 30 percent contingency fee for their services provided in the first trial. This amounted to $457,858.89. A 30 percent contingency fee is not inherently unreasonable, and this Court has affirmed higher fees. *See Koehring Co. v. Hyde Constr. Co.*, 236 So. 2d 377, 387 (Miss.

---

[6] *Veasley* explicitly allows for extra-contractual damages in the form of attorneys' fees. Justice Griffis takes issue with the jury awarding extra-contractual damages in the form of attorneys' fees as opposed to the trial judge. In *Fulton*, this Court indicated that jurors should award all extra-contractual damages, including attorneys' fees. 105 So. 3d at 288 ("When an insurer denies a claim without an arguable basis, but the jury does not award punitive damages, extra[-]contractual damages may provide an intermediate form of relief." (citing *Veasley*, 610 So. 2d 290)). The *Fulton* Court ultimately held that the trial court appropriately denied a post-trial motion for attorneys' fees because "[a]llowing an award of attorney fees on top of extra[-]contractual damages would amount to a double recovery, and it would contradict the American rule." *Id.* at 289 (citing *Willard v. Paracelsus Health Care Corp.*, 681 So. 2d 539, 544 (Miss. 1996). Justice Griffis fails to cite a case that prohibits a jury from awarding attorneys' fees as part of extra-contractual damages. Notably, his reliance on *Wood v. Cooley*, 78 So. 3d 920, 925 (Miss. Ct. App. 2011), is misplaced because *Wood* did not involve an award of extra-contractual damages.

1970); *see also* **Dunbar v. Renfroe (*In re Guardianship of Savell*)**, 876 So. 2d 308, 315 (Miss. 2004). In this instance, the trial judge used the information before him and presented to the jury what he deemed a reasonable award of attorneys' fees based on his own experience and observation. For the foregoing reasons, we find no abuse of discretion.

¶42. USAA argues that the trial court's failure to enforce the Minors' burden of proof requires reversal of the extra-contractual damages award. In *Veasley*, this Court found that even when punitive damages are not warranted, the insurer may be liable for extra-contractual damages. 610 So. 2d at 295. This includes awards for attorneys' fees. *Id.* As the finder of fact, the trial court found the Settlement Statement credible and relied on the undisputed amount of attorneys' fees listed in the statement to instruct the jury on the Estate's claim for extra-contractual damages. After review, we find no manifest error in the trial court's finding of fact or his decision to submit that finding as a jury instruction.

### 3. Whether the $10 million punitive damages award should be reversed and rendered, or, alternatively, reduced.

¶43. USAA contends that the record does not support a $10 million jury verdict. As part of its argument, USAA claims that Section 11-1-65 does not permit punitive damages because the Minor Estate did not prove the element of "reckless disregard *for the safety of others*[.]" Miss. Code Ann. § 11-1-65(1)(a) (emphasis added).[7] USAA further claims that the Minors did not contend that USAA adjusted their insurance claim in some manner that

---

[7] USAA partly bases its argument on the 2004 Legislative amendment to this section, which struck the statutory language exempting "Contracts; Libel and slander; or Causes of action for persons and property arising out of asbestos" from the punitive damages limits. *See* H.B. 13, 2004 Miss. Laws 1st Extraordinary Sess. ch. 1, § 4.

affected their safety, let alone evidenced a willful, wanton, or reckless disregard for their safety. The Minor Estate disagrees with USAA's "narrow" reading of the statute and instead argues that the word "safety" in the statute encompasses more than physical safety.

¶44. We are not persuaded by USAA's argument. The language at issue in Section 11-1-65 has been in the statute since its codification in 1993. *See* Miss. Code Ann. 11-1-65 (Supp. 1993). Since then, this Court has consistently interpreted the statute to encompass the gross and reckless disregard for the insured's rights. *See, e.g.*, ***Thornhill v. Walker-Hill Envt'l & Zur. Am. Ins. Co. of Ill.***, 345 So. 3d 1197 (Miss. 2022); ***Miss. Farm Bur. Cas. Ins. Co. v. Hardin***, 323 So. 3d 1034 (Miss. 2021); ***McCord v. Healthcare Recoveries, Inc.***, 960 So. 2d 399 (Miss. 2007); ***Caldwell v. Alfa Ins. Co.***, 686 So. 2d 1092 (Miss. 1996).

¶45. USAA alternatively argues that the $10 million verdict should be reduced because it claims that the damages award is a 22:1 ratio and therefore unconstitutionally disproportionate to the extra-contractual damages awarded ($457,858.89). USAA relies on ***State Farm Mutual Auto Insurance Co. v. Campbell***, 538 U.S. 408, 425, 123 S. Ct. 1513, 1524, 155 L. Ed. 2d 585 (2003), which states that "[s]ingle-digit multipliers are more likely to comport with due process."[8] Thus, USAA argues that a 1:1 ratio should apply to the damages award here.

¶46. USAA's argument is misplaced for two reasons. First, ***Campbell*** does not require a 1:1 ratio. In ***Campbell***, the United States Supreme Court held that the $145,000,000 punitive

---

[8] Although ***Campbell*** stated that "[s]ingle-digit multipliers are more likely to comport with due process," it did not overrule ***TXO Production Corp. v. Alliance Resources Corp.***, 509 U.S. 443, 453, 113 S. Ct. 2711, 125 L. Ed. 2d 366 (1993), which affirmed a 526:1 damages ratio. 538 U.S. at 425.

damages award on the $1,000,000 compensatory judgment violated due process. *Id.* at 408. As a result, the United States Supreme Court reversed and remanded the case to the Utah Supreme Court for further proceedings. *Id.* at 429. On remand, the Utah Supreme Court considered the guideline of single-digit multipliers provided in *Campbell* and ultimately reduced the punitive damages award to $9,018,780.75 (roughly nine times the amount of compensatory damages). *Campbell v. State Farm Mut. Auto. Ins. Co.*, 98 P.3d 409, 410 (Utah 2004). The United States Supreme Court denied certiorari. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 543 U.S. 874, 125 S. Ct. 114, 160 L. Ed. 2d 123 (2004). Second, USAA incorrectly uses the extra-contractual damages as part of the ratio as opposed to the compensatory damages. When determining the ratio, this Court considers the punitive damages ($10 million) and the compensatory damages awarded in the first trial ($1,547,293.37). *See, e.g.*, *Cooper Tire & Rubber Co. v. Tuckier*, 826 So. 2d 679, 690-91 (Miss. 2002). This results in an award that is .00025 of USAA's reported net worth[9] and less than seven times the amount of compensatory damages, which clearly falls within the guideline provided in *Campbell*.

### 4. Whether the trial court committed multiple errors warranting a new trial.

¶47. USAA additionally asserts that the trial court committed multiple errors warranting a new trial. Specifically, USAA claims (1) that the trial court erroneously instructed jurors that USAA's adjusters are charged with knowledge of all records at all times, (2) that

---

[9] The fact finder must consider the defendant's financial net worth when deciding a punitive damages award. *See* Miss. Code Ann. § 11-1-65(1)(e) (Rev. 2019). Here, the jury considered USAA's reported net worth of $40 billion.

USAA's request to depose Paul Minor was unfairly denied, and (3) that Paul Minor's bribery

convictions were improperly excluded.

¶48.    Jury Instruction P-2 stated:

> You are instructed that United Services Automobile Association (USAA) as
> an insurance company is charged with knowledge of what appears in its own
> records.
>
> In this case, USAA had in its underwriting department files documents and
> photographs with regard to 199[4] and 2001 onsite inspections of the Minor
> home by USAA.  USAA is therefore charged with knowledge of the entire
> contents of these and all other files in its possession.

Given that the underwriting file and documents were in USAA's possession, we find no

abuse of discretion in the trial court's jury instruction stating that USAA is responsible for

knowing what is in its own records.[10]  In overruling USAA's objection to the proposed

instruction, the trial court reasoned that "the Court of Appeals found that it was significant

to refer to the matters that were in [USAA's] files."  *See, e.g.*, ***Est. of Minor***, 247 So. 3d at

1272 ("The Minors correctly argue that this information was at all times available to USAA,

as it was part of USAA's corporate records").

¶49.    As for USAA's request to depose Paul Minor, the trial court limited discovery for both

parties in preparation of the second trial.  The trial court reasoned that USAA had already

deposed Paul Minor in preparation for the first trial.  The trial court has "considerable

---

[10] Justice Griffis relies on ***South Central Bell v. Epps***, 509 So. 2d 886 (Miss. 1987), to support his position that the trial court abused its discretion by granting Jury Instruction P-6.  But ***Epps*** is readily distinguishable from the present case.  In ***Epps***, the individual employees committed the offensive conduct arguably justifying punitive damages, as opposed to grossly negligent conduct of the company, which is the case here.  ***Epps***, 509 So. 2d at 894.  Further, the ***Epps*** Court made no finding that a corporation's employees could not be charged with knowledge of all corporate records.

discretion" regarding discovery, and its ruling is reviewed for abuse of discretion. ***Douglas v. Burley***, 134 So. 3d 692, 697 (Miss. 2012). After review, we find no abuse of discretion in the trial court's decision to limit discovery.

¶50. The trial court also has broad discretion in determining the admissibility of evidence. ***Murray v. Gray***, 322 So. 3d 451, 457 (Miss. 2021). Here, the trial court determined that Paul Minor's bribery convictions were more prejudicial than probative. We find no abuse of discretion in the trial court's ruling. For these reasons, we reject USAA's argument that it is entitled to a new trial.

### 5. Whether the trial court erred by denying the Minor Estate's post-trial motion for attorneys' fees.

¶51. The Minor Estate cross-appeals the trial court's denial of its post-trial motion for attorneys' fees. The Minor Estate sought an award of $4,500,000 against USAA for attorneys' fees and $208,452.92 for expenses post-trial. The court denied the motion and reasoned that the attorneys could be compensated from the jury award of $10 million in punitive damages.

¶52. The Estate recognizes that the jury awarded extra-contractual damages for attorneys' fees previously paid after the 2013 jury verdict but states there has been no consideration of the attorneys' fees incurred by the Estate's current counsel for prosecution of the appeal of the 2013 jury verdict or for the prosecution of this case after remand through trial. The Minor Estate correctly argues that under Mississippi law, a party successful in obtaining a judgment for punitive damages is entitled to seek an award of attorneys' fees and expenses incurred in the prosecution of the claim that led to the award of punitive damages. ***Miss.***

25

*Power & Light Co. v. Cook*, 832 So. 2d 474, 486 (Miss. 2002). An award of attorneys' fees must be supported by credible evidence. *Regency Nissan, Inc. v. Jenkins*, 678 So. 2d 95, 103 (Miss. 1995). The reasonableness of an attorneys' fee award is determined by reference to the factors set forth in Rule 1.5 of the Mississippi Rules of Professional Conduct. Again, these factors are referred to as the *McKee* factors.

¶53.    In its post-trial motion, the Minor Estate stated that it retained counsel pursuant to a contingency fee agreement. The agreement provided that, in the event of a recovery on the Estate's behalf, counsel for the Estate would be paid 45 percent of such recovery after deduction for expenses of litigation for the appeal of the 2013 jury verdict and for prosecution of this case on remand. Thus, the Estate claimed it was entitled to attorneys' fees in the amount of $4,500,000 together with an award of expenses in the amount of $208,452.92. The Estate stated it would provide documents supporting the fee amount at the request of the trial court. The Estate provided affidavits from its attorneys David Baria and Jim Reeves. Both attorneys attested to their contingency agreement with the Estate as well as their time spent on this case. Baria stated that he spent more than seven hundred hours litigating this matter on remand and incurred $18,929.65 in litigation expenses. Reeves stated that he spent nearly 474 hours litigating this matter on remand and incurred $3,941.69 in litigation expenses. Notably, the record does not support the remaining $185,581.58 in requested expenses.[11]

¶54.    The Estate also attached affidavits from two other Mississippi attorneys who reviewed

---

[11] At oral argument, Reeves stated that the remaining amount was incurred by the Minor Estate.

Baria's and Reeves's time and expense submissions. Both attorneys stated that a 45 percent contingency fee was customary and reasonable under the unique circumstances of this bad faith case and that the amount of time each attorney spent on this case was reasonable.

¶55. The Minor Estate argues that the trial court should not have considered the substantial punitive damages award ($10 million) when deciding whether to grant attorneys' fees as additional damages. According to the Estate, the trial court's decision "forced the Estate to bear the financial burden of having to litigate USAA's bad faith conduct for [eighteen] years." In his bench ruling, the trial judge stated:

> Now, as far as the attorney's fees in this case, while $10 million is not an unreasonable amount for punitive damages in this case, it is a substantial amount of money. This decision goes to how much the plaintiff will ultimately be awarded from this case. It's essentially whether the attorney's fees for all this action that's gone on these years in prosecuting this case will be borne by the defendant or out of plaintiffs' recovery. While $10 million does not—just looking at that number doesn't do much to deter a big—as big a company as the defendant is, I do believe that this is a fairly substantial penalty, and I think there is a fair amount of deterrence given this verdict. I've carefully considered that.

¶56. After review, we find that the trial court abused its discretion by finding that the Estate should bear the obligation of paying its attorneys' fees with nearly half of its punitive damages award. As previously stated, the $10 million punitive damages award is .00025 of USAA's reported net worth of $40 billion. In considering punitive damages, the jury was properly instructed to consider USAA's financial condition and net worth, the nature and reprehensibility of USAA's wrongdoing, USAA's awareness of the amount of harm being caused and USAA's motivation for causing harm, the duration of USAA's conduct and whether USAA attempted to conceal it, and any other relevant factor shown by evidence.

27

*See* § 11-1-65(e).  The jury was further instructed on the four purposes of punitive damages:

> First, it should be sufficient to punish and specifically deter the insurer from committing similar acts.  Second, the amount should be sufficient to make an example of the insurer to achieve general deterrence so as to prevent other insurers from committing like offenses. Third, the amount awarded should account for the insurer's financial worth and ability to pay. Finally, the punitive award should compensate the plaintiff for its public service in bringing the action.

*See **Sessums v. Northtown Limousines, Inc.***, 664 So. 2d 164, 169 (Miss. 1995); *see also* Jeffrey Jackson & D. Jason Childress, *Mississippi Insurance Law and Practice* § 13:14 (2024 ed.).  In accordance with Mississippi Code Section 11-1-65(f) (Rev. 2019), the trial court ascertained that this award was reasonable, stating that the $10 million award "was a fraction of 1 percent of the net worth of the defendant.  So this Court is not going to disturb the jury's verdict as to the amount of punitive damages . . . ."  Ultimately, however, the court essentially cut the jury verdict in half and forced the Minor Estate to pay nearly $5 million in attorneys' fees.

¶57.    This Court has held that "[a]n award of attorney's fees is justified when punitive damages are awarded." ***Union Carbide Corp. v. Nix, Jr.***, 142 So. 3d 374, 393 (Miss. 2014) (citing ***United Am. Ins. Co. v. Merrill***, 978 So. 2d 613, 636 (Miss. 2007)).  In other words, attorneys' fees may be awarded *in addition* to punitive damages.  *See **Miss. Power & Light Co.***, 832 So. 2d at 486.  Here, we find the trial court abused its discretion by finding that attorneys' fees were not justified in this case.  In denying the Minor Estate's post-trial motion, the trial court stated that "this decision goes to how much the plaintiff will ultimately be awarded from this case."  Not only will the Estate lose half of its punitive damages award

28

to attorneys' fees, the Estate will also have to pay taxes on the award.[12]  After paying attorneys' fees and taxes, the Minors will be left with a fraction of what the jury determined was a sufficient punishment and deterrent for USAA's bad faith conduct and what the trial court ascertained was a reasonable award.

¶58.    A punitive damages award not only serves as a deterrent, it also compensates the plaintiff for its public service in bringing the action. *See, e.g.*, ***Dixie Ins. Co. v. Mooneyhan***, 684 So. 2d 574, 585-86 (Miss. 1996).  Stated differently, "the basis in awarding [punitive] damages is to reward a plaintiff for public service in bringing the wrongdoer to account." ***Bankers Life & Cas. Co. v. Crenshaw***, 483 So. 2d 254, 269 (Miss. 1985), *aff'd*, 486 U.S. 71, 108 S. Ct. 1645, 100 L. Ed. 2d 62 (1988) (citing ***Fowler Butane Gas Co. v. Varner***, 244 Miss. 130, 141 So. 2d 226 (1962)).   Here, we find the trial court's decision to force the Minor Estate to use nearly half of its award to pay attorneys' fees does not adequately compensate the Estate for bringing this action against USAA for its bad faith conduct in handling the Minors' insurance claim from 2005. Thus, we hold that the trial court erred by denying the Estate's post-trial motion for attorneys' fees.

¶59.    Now we turn to the issue of determining attorneys' fees.  In reviewing the evidence before us, we find that the Minor Estate's attorneys' fees are reasonable and that the Estate presented credible evidence in affidavit form to support their request for $4,500,000 in attorneys' fees.  Specifically, Baria and Reeves testified that they entered into a 45 percent contingency-fee agreement with the Minor Estate and that a 45 percent contingency free "is

_____

[12] *See* https://www.irs.gov/government-entities/tax-implications-of-settlements-and-judgments.

consistent with usual and customary contingency fees charged in the community." The Estate also provided affidavits from two other experienced Mississippi attorneys who testified to the reasonableness of a 45 percent contingency fee in this case.

¶60. Baria and Reeves testified that the contingency agreement allowed them to recover expenses incurred in prosecuting the case through trial. In its motion, the Estate offered to provide supporting documents for its fee request. Because those documents are not in the record, we will not award attorneys' fees for the alleged incurred expenses in the amount of $208,452.92. Instead, we solely awards attorneys' fees based on the attorneys contingency-fee agreement with the Estate. Accordingly, we reverse the trial court's order and render attorneys' fees on behalf of the Estate. The separate opinions disagree with our decision to reverse and render attorneys' fees. To be clear, this Court has the authority to reverse and render attorneys' fees, so long as we have sufficient evidence to make that determination. *See McKee*, 418 So. 2d at 767. After careful review and consideration, we find that there is sufficient evidence before us to reverse and render an award of attorneys' fees in this case. Therefore, the Minor Estate shall recover attorneys' fees from USAA in the amount of $4,500,000, plus post-judgment interest at an annual rate of 4 percent from October 3, 2022, the date of judgment, until paid. *See* Miss. R. App. P. 37.

## CONCLUSION

¶61. In sum, the trial judge did not err as a matter of law by submitting the issue of punitive damages to jury, and the $10 million award of punitive damages is not unconstitutionally disproportionate. We find no error in the jury's award of extra-contractual damages.

30

Further, there are no errors (standing alone or combined) that warrant a new trial. As for the Minor Estate's cross-appeal, we find the trial court abused its discretion by denying the Estate's post-trial motion for attorneys' fees. Therefore, we affirm the jury verdict awarding the Minor Estate $10 million in punitive damages and $457,858.89 in extra-contractual damages as to attorneys' fees, and reverse the judgment of the trial court and render attorneys' fees on behalf of the Estate in the amount of $4,500,000, plus post-judgment interest at an annual rate of 4 percent from October 3, 2022, the date of judgment, until paid.

¶62.    **ON DIRECT APPEAL: AFFIRMED. ON CROSS-APPEAL: REVERSED AND RENDERED.**

    **RANDOLPH, C.J., KITCHENS AND KING, P.JJ., AND BEAM, J., CONCUR. MAXWELL, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY CHAMBERLIN, J.; GRIFFIS, J., JOINS IN PART. GRIFFIS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY MAXWELL, J. COLEMAN, J., NOT PARTICIPATING.**

    **MAXWELL, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶63.    More than a decade ago, as a judge on the Mississippi Court of Appeals, I authored a majority opinion that took the exact approach advocated by USAA in this case—that taking a "hard-line business position," when there is at least some argument for the business's actions, does not rise to the level of clear and convincing evidence of an "extreme case" in which punitive damages are warranted. *T.C.B. Constr. Co. v. W.C. Fore Trucking, Inc. (T.C.B. I)*, 134 So. 3d 752, 769 (Miss. Ct. App. 2012), *aff'd in part, rev'd in part*, 134 So. 3d 701 (Miss. 2013). But on certiorari review, this Court said I was wrong. *T.C.B. Constr. Co. (T.C.B. II)*, 134 So. 3d at 705.

¶64. In that case, this Court unanimously reversed the Court of Appeals' handling of the punitive-damages issue and remanded it to the trial court. *Id.* This Court found "the evidence [in that case] demonstrate[d] a type of conduct for which punitive damages are designed"—namely, that a contractor "acted in bad faith, with complete disregard for [its subcontractor's] rights, seeking to reap the benefits of its contract while at the same time denying its obligations." *Id.*

¶65. In other words, despite the plain language of Section 11-1-65—which reserves punitive damages for cases of "actual malice, gross negligence which evidences a willful, wanton or reckless disregard *for the safety of others*, or . . . actual fraud"[13]—this Court has expressly determined that a company claiming ignorance, when contradicted by some record evidence, is sufficient to support a finding that the company acted "with reckless disregard for [another's *contractual*] *rights*." *T.C.B. II*, 134 So. 3d at 705 (emphasis added). Again, back in 2012, I leaned on this very statute, just as USAA does here. *T.C.B. I*, 134 So. 3d at 768-69. But the unanimous Supreme Court rejected that approach. *T.C.B. II*, 134 So. 3d at 705.

¶66. In the decade following *T.C.B. II*, the Legislature could have spoken up and clarified that "reckless disregard for the safety of others" does not include reckless disregard for others' *contractual* rights. But the Legislature has not done so. Therefore, I must assume the Legislature is either unaware of or perhaps in fact approves of the *T.C.B. II* approach to punitive damages in bad-faith breach-of-contract cases. Either way, since the Legislature has

---

[13] Miss. Code Ann. § 11-1-65(1)(a) (Rev. 2019) (emphasis added)

not addressed this statute, *T.C.B. II* remains our binding law. And it is *T.C.B. II*'s handling of punitive damages that the majority follows here. For these reasons, based on *T.C.B. II*, I join the majority in finding that USAA's actions sufficiently supported a punitive-damages award.

¶67. But I do not join the majority's decision to hand out an award of $4.5 million in *additional* attorney's fees on top of the punitive-damages award. The mere fact this litigation has been long-standing does not give this Court authority to jump in and take the attorney's fee issue from the trial court—where this Court has consistently said this issue belongs.

¶68. Even if the trial judge abused his discretion by outright denying the Minor Estate's request for attorney's fees on top of the $10 million punitive-damages award—which I *do not* find that he did—this Court should not step in and make its own reasonableness determination on appeal. As this Court has acknowledged, "[i]t is well settled in this State that what constitutes a reasonable attorney's fee rests within the sound discretion of the trial court . . . ." *Mauck v. Columbus Hotel Co.*, 741 So. 2d 259, 269 (Miss. 1999). And this Court, as the appellate court, "will not arbitrarily substitute our judgment for that of the [trial judge] who is in the best position to evaluate all factors." *Bay Point Props., Inc. v. Miss. Transp. Comm'n*, 304 So. 3d 606, 608 (Miss. 2020) (quoting *Mabus v. Mabus*, 910 So. 2d 486, 488 (Miss. 2005)). If this Court finds error in the trial judge's denial of attorney's fees, instead of going against well-settled law—and taking the reasonableness question away from the trial court—this Court should remand the attorney's fees issue to the trial court, as it did in *T.C.B. II*. 134 So. 3d at 705.

¶69. That said, as mentioned, I see no reason at all for this Court to inject itself into the attorney's fees issue. That is because the trial court *did not* abuse its discretion by denying the Minor Estate the additional $4.5 million in additional attorney's fees that it wants.

¶70. While attorney's fees are "justified" when "punitive damages are awarded by the jury," they are not automatic. *Miss. Power & Light Co. v. Cook*, 832 So. 2d 474, 486 (Miss. 2002). Stated differently, just because a Mississippi trial court *can* award attorney's fees does not mean it *must*. Instead, whether to allow attorney's fees has always been "a matter committed to the sound discretion of the trial judge." *Smith v. Dorsey*, 599 So. 2d 529, 550 (Miss. 1992) (citing *Young v. Huron Smith Oil Co., Inc.*, 564 So. 2d 36, 40 (Miss. 1990); *Carter v. Clegg*, 557 So. 2d 1187, 1192 (Miss. 1990)).[14]

¶71. Part of the trial judge's discretion in allowing attorney's fees is taking into account punitive damages. *Pursue Energy Corp. v. Abernathy*, 77 So. 3d 1094, 1101 (Miss. 2011); *Holly*, 677 So. 2d at 184-85. In fact, this Court has even gone so far as to hold "that attorney's fees may be awarded instead of punitive damages." *Abernathy*, 77 So. 3d at 1101 (citing *Holly*, 677 So. 2d at 184). And if that is the case—that a trial judge may validly find punitive damages are not appropriate but litigation expenses should be reimbursed—then a trial judge may just as validly find that, based on a punitive-damages award big enough to

_____

[14] In doing so, this Court reasoned that "[a] trial judge may validly find that, although the conduct of a defendant in a given case is such that the awarding of punitive damages would be appropriate, the actual awarding of additional monetary damages above the compensatory damages would serve no purpose or otherwise be inappropriate." *Aqua-Culture Techs., Ltd. v. Holly*, 677 So. 2d 171, 184 (Miss. 1996). Still, "the trial judge may also validly find that the plaintiff should not have to suffer the expense of litigation forced upon it by the defendant's conduct, and therefore determine that attorney fees should be awarded." *Id.*

cover litigation expenses, attorney's fees need not be awarded.

¶72. In other words, if "it [i]s proper for the [trial judge] to award attorney's fees in lieu of punitive damages," then why is it error for the trial judge to deny attorney's fees in light of a large enough punitive-damages award to cover litigation expenses? *Id.* Clearly, it is not error.

¶73. The purpose of a punitive-damages award is not to provide a gift to the plaintiff. The purpose is to punish the defendant "for unlawful, malicious, wanton and reckless acts, and they are allowed by reason of undertaking to prevent its recurring in the future." *C & C Trucking Co. v. Smith*, 612 So. 2d 1092, 1101 (Miss. 1992) (quoting Redden, *Punitive Damages* § 5.2(A)(24) (1980)). And the amount of punitive damages is tied to the punitive economic impact to the defendant based on its net worth. *Id.* In other words, its about the amount the defendant must fork over and forfeit as punishment. Its not about the amount the plaintiff will get to pocket.

¶74. Of course, this Court has said when a defendant's actions warrant punitive damages, the plaintiff should not be burdened with paying his own attorney's fees bringing that defendant to judgment. *Abernathy*, 77 So. 3d at 1101 (citing *Holly*, 677 So. 2d at 184). But here, in the trial judge's estimation, the Minor Estate would not be burdened by the expense of litigation. Instead, the Minor Estate would still receive $5.5 million after paying its attorneys.

¶75. The majority finds reversible error because, under the contingency-fee contract, the Minor Estate will have to hand over almost half the punitive-damages award to its attorneys.

35

Maj. Op. ¶ 57. But the Minor Estate *negotiated* this 45 percent rate in exchange for bearing no risk in pursuing its bad-faith claim. If the Minor Estate had recovered no punitive damages, it would have paid its attorneys zero. *See **Tyson v. Moore***, 613 So. 2d 817, 824-25 (Miss. 1992) (noting an attorney's right to recover a contingency fee cannot vest until this contingency—in this case the recovery of money damages—has occurred). And for its underlying breach-of-contract claim, the Minor Estate *was* awarded almost one-half million dollars in extra-contractual damages, so it was not only made whole, but also it did not have to bear any litigation costs.

¶76. The majority also finds error because the Minor Estate will have to pay taxes. But the majority cites no legal authority that it is reversible error to not take into account tax consequences of a punitive-damages award. Nor can it. We all have to pay taxes.

¶77. The bottom line is that attorney's fees in a punitive-damages case fall within the sound discretion of the trial court. ***Abernathy***, 77 So. 3d at 1101; ***Holly***, 677 So. 2d at 184-85. This is why I dissent in part. To be clear, I am not saying I would have denied additional attorney's fees if I were in the trial judge's shoes. But I cannot say the judge abused his discretion by handling the fees issue as he did.

¶78. I concur with the majority's affirming the jury's $10 million punitive-damages award and the $457,858.89 extra-contractual-damages award. But I dissent from the majority's decision to throw in an additional $4.5 million in attorney's fees.

**CHAMBERLIN, J., JOINS THIS OPINION. GRIFFIS, J., JOINS THIS OPINION IN PART.**

**GRIFFIS, JUSTICE, DISSENTING:**

36

¶79. It is simply astounding that a majority of the Justices of this Court have decided to render an award of $4,500,000 in attorneys' fees, with no citation of any legal authority for this remarkable and unprecedented award.

¶80. The majority's decision to "render" is merely based on their belief that they have the "authority" to do so. Maj. Op. ¶ 60. Yet its authority to do so is not based on any case or statute. Instead, the majority simply finds that because the Estate was "forced . . . to bear the financial burden of having to litigate USAA's bad faith conduct for [eighteen] years[,]" Maj. Op. ¶ 55 (second alteration in original) (internal quotation marks omitted), the Estate "should [not] bear the obligation of paying its attorneys' fees with nearly half of its punitive damages award."[15] Maj. Op. ¶ 56. The fallacy of the majority's finding, however, is that the damages under the insurance contract were determined by the trial court on September 20, 2013, and were paid shortly thereafter. The contract damages have not been pending for eighteen years. Instead, the Minors have fought for more than ten years now to obtain punitive damages and attorneys' fees.

¶81. It appears to be worth the wait. Not one Mississippi case supports the majority's decision on this issue, and the majority does not even attempt to cite a case for its decision.

---

[15] For more than six years, this case has been pending before this Court and the Court of Appeals. In Mississippi, the speed of the pursuit of litigation is often in the hands of plaintiffs and their lawyers. With absolutely no analysis as to who was responsible for the delay in this litigation, the majority simply blames USAA for the entire delay in this case. The majority does not even consider that this case was brought by a plaintiff who was once one of Mississippi's preeminent plaintiff's lawyers. I cannot agree with the majority that the mere time span of this litigation, even eighteen years, is a sufficient reason to award $4,500,000 in attorneys' fees, especially without detailed review of the reasons for the delay and a reasonableness analysis.

37

Therefore, I respectfully disagree and dissent.

¶82.    I also respectfully disagree and dissent as to the other issues.  I will consider this case in a sightly different order than the majority.  I will begin with the issue of attorneys' fees and conclude with the issue of punitive damages.  The majority's subheadings will be used, albeit out of order.

### I.    Attorneys' Fees

**Whether the jury award of $457,858.89 in extra-contractual damages (attorneys' fees) should be reversed and rendered.**

¶83.    "The term 'extracontractual damages' refers to damages not justified under the terms of the contract[.]" *Fulton v. Miss. Farm Bureau Cas. Ins. Co.*, 105 So. 3d 284, 289 (Miss. 2012) (citing *Windmon v. Marshall*, 926 So. 2d 867, 874 n.2 (Miss. 2006)).  In their complaint, the only extracontractual damage the Minors requested was attorneys' fees.[16]

¶84.    On remand, the trial court submitted to the jury the issue of attorneys' fees from the first trial.[17]  The trial court *instructed* the jury as follows:

Notice of Facts by the Court

The Court has noted and accepted the following:

The Estate of Sylvia Minor has paid $457,858.89, in fees to the

---

[16] The Minors dismissed their emotional distress claims and any related damages. And although punitive damages are technically extracontractual, "in the insurance context, 'extracontractual damages' are not punitive damages in the traditional sense." *Fulton*, 105 So. 3d at 289 (quoting *Universal Life Ins. Co. v. Veasley*, 610 So. 2d 290, 295 (Miss. 1992)).

[17] The Minors were represented at the first trial by Chuck McRae, Oliver Diaz, and Gerald Maples.  On remand, the Minors were represented by different counsel—David Baria and Jim Reeves.

38

attorneys who represented the Estate in the first trial of this case. *The jury is to accept this as true.*

(Emphasis added.)  This was error for several reasons.

> *A.     Punitive damages were awarded, making "extracontractual damages" inappropriate.*

¶85.    The majority affirms "the jury award of $457,858.89 in extra-contractual damages in the form of attorneys' fees."  Maj. Op. ¶¶ 38-41.  The majority also affirms the award of $10,000,000 in punitive damages. Maj. Op. ¶ 37.  In *Fulton*, however, this Court specifically held that  "*[e]xtracontractual damages are awarded when punitive damages are not*[.]" *Fulton*, 105 So. 3d at 289 (citing *Veasley*, 610 So. 2d at 295).  Mississippi law provides that an award of extracontractual damages is not proper when there is an award of punitive damages.  *Id.* (citing *Veasley*, 610 So. 2d at 295).

¶86.    Whether extracontractual damages are allowed based on the circumstances of this case is a question of law.  "For questions of law, we employ a de novo standard of review and will reverse only for an erroneous interpretation or application of the law."  *In re Est. of Farmer ex rel. Farmer*, 964 So. 2d 498, 499 (Miss. 2007) (citing *Smith v. Hollins*, 905 So. 2d 1267, 1270 (Miss. 2005)).

¶87.    "[A]ttorney's fees are a special remedy available only when expressly provided for in either a statute or contract, or when there is sufficient proof to award punitive damages." *Falkner v. Stubbs*, 121 So. 3d 899, 903  (Miss. 2013) (citing *Stanton & Assocs., Inc. v. Bryant Constr. Co., Inc.*, 464 So. 2d 499, 502 (Miss. 1985)).  "Absent some statutory authority or contractual provision, attorneys' fees cannot be awarded unless punitive damages

are also proper." ***Miss. Power & Light Co. v. Cook***, 832 So. 2d 474, 486 (Miss. 2002) (citing ***Aetna Cas. & Sur. Co. v. Steele***, 373 So. 2d 797, 801 (Miss. 1979)). Thus, attorneys' fees may only be awarded under three conditions: (1) when provided for by statute, (2) when provided for by contract, or (3) when punitive damages are proper. ***Id.*** (citing ***Steele***, 373 So. 2d at 801).

¶88. This Court has also carved out a fourth condition for the award of attorneys' fees in insurance bad faith cases. In ***Veasley***, Veasley, a beneficiary of a life insurance policy, sued Universal Life Insurance Co. for its failure to pay the claim. ***Universal Life Ins. Co. v. Veasley***, 610 So. 2d at 292. In addition to contractual and punitive damages, Veasley sought extracontractual damages for emotional distress, claiming "Universal's refusal to pay her claim caused her worry, nervousness, depression." ***Id.*** The jury awarded the balance due under the contract plus $500 in actual extracontractual damages and $175,000 in punitive damages. ***Id.***

¶89. On appeal, due to no evidence of bad faith, the Court reversed the award of punitive damages since "no rational jury could find . . . that the acts of the defendant were willful or grossly negligent[.]" ***Id.*** at 294. The Court, however, affirmed the jury's award of extracontractual damages for emotional distress. ***Id.*** at 295-96. In doing so, the Court reasoned:

> Some justices on this court have suggested that *extra-contractual damages ought be awarded in cases involving a failure to pay on an insurance contract without an arguable reason even where the circumstances are not such that punitive damages are proper.* Applying the familiar tort law principle that one is liable for the full measure of the reasonably foreseeable consequences of her actions, it is entirely foreseeable by an insurer that the failure to pay a valid

claim through the negligence of its employees should cause some adverse result to the one entitled to payment. Some anxiety and emotional distress would ordinarily follow, especially in the area of life insurance where the loss of a loved one is exacerbated by the attendant financial effects of that loss. *Additional inconvenience and expense, attorneys fees and the like should be expected in an effort to have the oversight corrected.* It is no more than just that the injured party be compensated for these injuries.

*Id.* at 295 (emphasis added) (citation omitted).

¶90.    In *Fulton*, Fulton claimed that Farm Bureau "had breached its contractual duty to pay insurance proceeds; delayed payment of insurance proceeds in bad faith; and negligently failed to timely investigate, process, and pay Fulton's [uninsured-motorist] claims." *Fulton*, 105 So. 3d at 286. "Fulton pleaded actual economic damages, including attorney's fees, as an element of damages resulting from Farm Bureau's delay in investigating and paying the claim." *Id.* The jury found Farm Bureau had neither breached the insurance contract nor acted in bad faith, "and it awarded Fulton no punitive damages." *Id.* "However, the jury awarded Fulton the remainder of his uninsured-motorist policy benefits and—because Farm Bureau had delayed investigating and paying Fulton's claim—the jury awarded Fulton $10,000 in extracontractual damages." *Id.*

¶91.    After trial, Fulton filed a motion to amend the judgment, seeking attorneys' fees, costs, and expenses. *Id.* The trial court denied Fulton's motion. *Id.* Fulton appealed the trial court's denial of his post-trial motion to amend. *Id.* "Neither party appealed the extracontractual damages or the denial of punitive damages." *Id.*

¶92.    On appeal, the Court did not address the award of extracontractual damages since that issue was not appealed. *Id.* at 289. But the Court did discuss extracontractual damages and

41

held:

> The term "extracontractual damages" refers to damages not justified under the terms of the contract, and necessarily including punitive damages. Punitive damages, technically, are always "extra-contractual" damages, since no one contracts to pay them. But in the insurance context, "extracontractual damages" are not punitive damages in the traditional sense. *Extracontractual damages are awarded when punitive damages are not*, and are intended to cover reasonably foreseeable costs and expenses, such as attorney's fees.

*Fulton*, 105 So. 3d at 289 (emphasis added) (footnotes omitted) (citations omitted). The Court noted that while *Veasley* "permits an award of attorney's fees without an award of punitive damages[,] . . . *Veasley* does not stand for the proposition that attorney fees may be awarded post-trial, on top of an award of extracontractual damages." *Id.* at 290 (citing *Veasley*, 610 So. 2d at 295).

¶93. In *Veasley* and *Fulton*, this Court created a fourth avenue for attorneys' fees in cases "involving a failure to pay on an insurance contract without an arguable reason even where the circumstances are not such that punitive damages are proper." *Veasley*, 610 So. 2d at 295. Nevertheless, both *Veasley* and *Fulton* emphasize that "*[e]xtracontractual damages are awarded when punitive damages are not*[.]" *Fulton*, 105 So. 3d at 289 (emphasis added) (citing *Veasley*, 610 So. 2d at 295). The majority makes no attempt to cite any case to distinguish the holding in *Fulton*, in which this Court affirmatively ruled that "[e]xtracontractual damages are awarded when punitive damages are not[.]" *Id.* (citing *Veasley*, 610 So. 2d at 295). It was a clear affirmative statement of Mississippi law that was an essential part of the Court's holding. If the majority disagrees, then it should clearly and specifically overrule *Fulton*. It does not nor does it give any reason for the Court not to

42

comply in this case.

¶94.     Here, because punitive damages were awarded, extracontractual damages should not have been awarded. *Id.* (citing *Veasley*, 610 So. 2d at 295). Thus, I am of the opinion that the award of $457,858.89 in extracontractual damages should be reversed and rendered.

> B.     The Minors offered no admissible, credible
> evidence to support their attorneys' fees.

¶95.     An award of attorneys' fees "must be supported by credible evidence." *Cook*, 832 So. 2d at 486 (citing *Regency Nissan, Inc. v. Jenkins*, 678 So. 2d 95, 103 (Miss. 1995)).[18] To support their claim for attorneys' fees, the Minors offered an *unauthenticated*[19] settlement statement between the Minors and their former trial counsel that referenced a 30 percent contingency fee but provided no details on the hours worked or rates charged. The Minors were not sure where the settlement statement was created, with counsel for the Minors stating he was "not sure if [the settlement statement] was created out of Mr. McRae's office or what." Interestingly, the trial court refused to admit the settlement statement as evidence,[20] noting that USAA "had nothing to go by about this matter." Nevertheless, the trial court instructed the jury to "accept . . . as true" that the Minors paid $457,858.89 in attorneys' fees

---

[18] The majority cites this same standard of law as a basis to reverse the trial judge's decision not to award post-trial attorneys' fees. Maj. Op. ¶ 52.

[19] The statement was signed by McRae, Diaz, and Stephen Minor, on behalf of the Estate of Minor. No one testified at trial to authenticate the statement. Neither McRae nor Diaz attended the second trial. Paul Minor presumably knew how much he had paid his attorneys, but he did not attend or testify at the second trial. Stephen Minor, who signed the statement, also did not attend or testify at the second trial regarding the statement.

[20] The settlement statement was marked for identification purposes only.

43

with no evidentiary basis for the court's instruction.

¶96.    Mississippi law required the Minors to offer *admissible, credible* evidence to support their request for attorneys' fees.  **Id.** (citing **Jenkins**, 678 So. 2d at 103).  Despite the lack of admissible, credible evidence to support the request for attorneys' fees, the trial court accepted the unauthenticated settlement statement for the truth of the matter asserted—that the Minors paid a 30 percent contingency fee and should be reimbursed in full.  There was simply no evidentiary basis for the trial court to put its judicial stamp of approval on the contingency fee amount by instructing jurors to "accept as true" that the Minors "paid $457,858.89 in fees" to their the attorneys from the first trial.

¶97.    Because the Minors failed to support their claim for attorneys' fees with admissible, credible evidence, I am of the opinion that it was error for the trial court to instruct the jury to accept the amount of fees referenced in the settlement statement.  Thus, the award of $457,858.89 in extracontractual damages should be reversed and rendered.

> C.    *The trial court, not a jury, should award attorneys' fees.*

¶98.    "We will not reverse the trial court on the question of attorney's fees unless there is a manifest abuse of discretion in making the allowance."[21]  **Deer Creek Constr. Co. v. Peterson**, 412 So. 2d 1169, 1173 (Miss. 1982).  Further, it is a basic principle of law that an award of attorneys' fees must be reasonable. Miss. R. Pro. Conduct 1.5(a).  Who determines

---

[21] Interestingly, the majority identifies this governing standard of review in paragraph 29 citing **Bay Point Properties, Inc. v. Mississippi Transportation Commission**, 304 So. 3d 606, 608 (Miss. 2020), and **Mauck v. Columbus Hotel Co.**, 741 So. 2d 259, 269 (Miss. 1999).  In neither of these cases, however, was the award of attorneys' fees submitted to a jury.  Instead, in both cases, the award of attorneys' fees was considered by the trial court. **Bay Point Props., Inc.**, 304 So. 3d at 607; **Mauck**, 741 So. 2d at 262.

whether the award is reasonable? The trial court, not the jury.

¶99. "The fixing of reasonable attorneys' fees is a matter ordinarily within the sound discretion *of the trial court*[.]" ***Cook***, 832 So. 2d at 486 (emphasis added) (internal quotation mark omitted) (quoting ***Gilchrist Tractor Co. v. Stribling***, 192 So. 2d 409, 418 (Miss. 1966)). "It is well settled in this State that what constitutes a reasonable attorney's fee *rests within the sound discretion of the trial court* and any testimony by attorneys with respect to such fees is purely advisory and not binding on the trial court." ***Id.*** at 478 (emphasis added) (quoting ***Mauck***, 741 So. 2d at 269.

¶100. The Minors rely on ***Fulton*** to suggest that the jury, as opposed to the trial court, can award attorneys' fees. And as previously discussed, ***Fulton*** referenced ***Veasley***. In ***Veasley***, the Court neither found nor suggested that attorneys' fees are to be awarded by the jury. ***Veasley***, 610 So. 2d at 295. Instead, the Court simply stated that "under certain circumstances, 'extracontractual damages' may be available, even if punitive damages are not." ***Fulton***, 105 So. 3d at 290 (citing ***Veasley***, 610 So. 2d at 295).

¶101. In ***Fulton***, extracontractual damages were awarded by the jury. ***Id.*** at 286. It is unclear, however, whether that award included attorneys' fees. "Fulton pleaded actual economic damages, including attorneys' fees[.]" ***Id.*** (emphasis added). But there was no discussion regarding the other economic damages requested, nor was there any discussion as to whether the award of extracontractual damages included Fulton's requested attorneys' fees. *See id.* at 291 ("[S]ince [Fulton] did not appeal that issue, he will not be heard now to complain that he did not receive an award of attorney's fees."). Moreover, because neither

45

party appealed the award of extracontractual damages, the issue of whether the jury properly awarded attorneys' fees was not considered. ***Id.***

¶102. Both ***Veasley*** and ***Fulton*** are distinguishable from the case before us. In ***Veasley***, Veasley requested extracontractual damages only for emotional distress. ***Veasley***, 610 So. 2d at 292. In ***Fulton***, Fulton sought actual economic damages including, but not limited to, attorneys' fees. ***Fulton***, 105 So. 3d at 286. Here, unlike in ***Veasley*** and ***Fulton***, the only "extracontractual damage" the Minors requested was attorneys' fees.

¶103. Neither the Minors nor the majority cite a case in which the only extracontractual damage considered by the jury was attorneys' fees. In fact, if we review every case the majority cites on the issue of attorneys' fees, there is not one case in which the jury awarded attorneys' fees. *See, e.g.*, ***Falkner***, 121 So. 3d at 901 (circuit court judge awarded attorneys' fees); ***Stanton & Assocs., Inc.***, 464 So. 2d at 502 (circuit court judge awarded attorneys' fees); ***Stribling***, 192 So. 2d at 411 (chancellor awarded attorneys' fees); ***Gillies v. Gillies (In re Est. of Gillies)***, 830 So. 2d 640, 644 (Miss. 2002) (chancellor awarded attorneys' fees); ***Cook***, 832 So. 2d at 477 (circuit judge denied motion to assess attorneys' fees); ***Jenkins***, 678 So. 2d at 103 (circuit court judge awarded attorneys' fees); ***McKee v. McKee***, 418 So. 2d 764, 765 (Miss. 1982) (chancellor awarded attorneys' fees). Despite this, the majority argues that I "fail[] to cite a case that prohibits a jury from awarding attorneys' fees as part of extra-contractual damages." Maj. Op. ¶ 41 n.7. Yet the majority cites no authority for its position. Indeed, the majority recognizes that "Mississippi case law is scarce," especially case law that supports the majority's finding. Maj. Op. ¶ 40.

¶104. I have found only one case in which an attorneys' fees instruction proposed by the plaintiff was given to the jury. In *Clark v. Whiten*, the trial court gave a jury instruction on attorneys' fees to the jury. *Clark v. Whiten*, 508 So. 2d 1105, 1108 (Miss. 1987). The trial judge, however, gave the instruction after the defendant made no objection. *Id.* On appellate review, this Court held that the jury could properly award attorneys' fees because the parties agreed to submit the issue to the jury. *Id.* The Court added that "[o]rdinarily, such an assessment could be made by the court without the aid of the jury." *Id.*

¶105. The Court of Appeals has held that "it is settled Mississippi law that 'attorney's fees are not an issue to be decided by the jury[,]' and, instead, are committed to the discretion of the trial court." *Wood v. Cooley*, 78 So. 3d 920, 925 (Miss. Ct. App. 2011) (alteration in original) (quoting *Mitchell v. Broadway Transfer & Storage Co.*, 749 So. 2d 289, 290 (Miss. Ct. App. 1999)), *cert. denied*, 80 So. 3d 111 (Miss. 2012) (table). Interestingly, although Justice Ishee now ignores *Wood*, he expressly concurred in *Wood* as a judge on the Court of Appeals. I find it was error to submit the issue of attorneys' fees to the jury.

¶106. Even assuming *Fulton* applies, the Court made clear that extracontractual damages "are intended to cover *reasonably* foreseeable costs and expenses, such as attorney's fees." *Fulton*, 105 So. 3d at 289 (emphasis added) (citing *Veasley*, 610 So. 2d at 295). This certainly implies a finding of reasonableness by the trial court.

>     D.     *Every award of attorneys' fees must be reasonable.*

¶107. The trial court failed to address and consider whether the $457,858.89 award of attorneys' fees was reasonable. "A lawyer's fee shall be reasonable." Miss. R. Pro. Conduct

1.5(a). Because the fee must be reasonable, a finding of reasonableness must be determined.

¶108. "The reasonableness of an attorney's fee award is determined by reference to the factors set forth in Rule 1.5 of the Mississippi Rules of Professional Conduct." *Mauck*, 741 So. 2d at 269. Under Rule 1.5(a),

> The factors to be considered in determining the reasonableness of a fee include the following:
>
> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent.

Miss. R. Pro. Conduct 1.5. These factors, often referred to as the *McKee* factors,[22] "are almost identical" to the "lodestar" factors established by the United States Supreme Court." *Mauck*, 741 So. 2d at 270, 272.

¶109. Here, the record is clear, and it is undisputed that the trial court made no reference to these factors. Instead, the trial court simply accepted as true the settlement statement, which

---

[22] *See McKee v. McKee*, 418 So. 2d 764 (Miss. 1982).

was not admitted into evidence, and the trial court instructed the jury to do the same.

¶110. The majority asserts that "[b]ecause the [Minors's] attorneys took this case on contingency, they would not be required to keep detailed time records." Maj. Op. ¶ 40 n.6. But in *Mauck*, this Court applied the factors in Rule 1.5 despite a contingency fee contract. *Id.* at 272. The Court emphasized that "what is controlling is what is reasonable." *Id.* at 271 (internal quotation marks omitted). It noted that "to enhance an award because of a contingency fee arrangement would put duplicative weight on this one factor when considering all the . . . factors." *Id.* at 272 (citing *City of Burlington v. Dague*, 505 U.S. 557, 112 S. Ct. 2638, 120 L. Ed. 2d 449 (1992)).

¶111. Despite *Mauck*, the majority holds that the required Rule 1.5 reasonableness determination may be disregarded and that there is no reason for the presentation of attorney time records to support the award simply because the Minors' attorneys were acting under a contingency fee agreement. Again, the majority cites no legal authority for this holding.

¶112. I agree with the sage advice authored by my esteemed colleague, now-Presiding Justice Kitchens, which was joined by now-Presiding Justice King. In *Forbes v. Hixson (In re Estate of St. Martin)*, 145 So. 3d 1124, 1140 (Miss. 2014) (Kitchens, J., specially concurring) (emphasis added), he advised plaintiff's lawyers that

> [I]n light of the state of extreme vulnerability of contingency-fee attorneys . . . . , Mississippi practitioners are cautioned that *it behooves them to keep accurate time records, even in cases in which they hope to earn a contingency fee*. Such records may become of vital importance in an attorney's attempt to be paid . . . .
>
> *A word to the wise is sufficient.*

49

Apparently, Presiding Justice Kitchens's words of wisdom, caution, and advice are not necessary when this Court decides to award almost $5 million dollars of attorneys' fees with no evidentiary support or reasonableness determination.

¶113. Additionally, in *In re Estate of Gillies*, the chancellor, despite a contingency fee contract, expressly considered the eight factors enumerated in Rule 1.5 to determine a reasonable attorneys' fee. *In re Est. of Gillies*, 830 So. 2d at 646. On appeal, the attorney argued that the "chancery court abused its discretion . . . in using an hourly rate and time methodology to determine his fee, rather than on a contingency basis." *Id.* at 645. But the Court disagreed and found the chancellor "followed the proper procedure that this Court has established for determining reasonable attorney's fees." *Id.* at 646.

¶114. Here, although the trial court considered factor 8, whether the fee was fixed or contingent, it did not consider any other factors under Rule 1.5. This was reversible error. As in *Mauck*, to award attorneys' fees based solely on a contingency fee arrangement "would put duplicative weight on this one factor[.]" *Mauck*, 741 So. 2d at 272 (citing *Dague*, 505 U.S. at 562).

¶115. Because the trial court failed to consider and determine whether the $457,858.89 attorneys' fees award was reasonable, the award of $457,858.89 in extracontractual damages should be reversed and rendered.

¶116. The Minors argue that they were not required to show reasonableness under Mississippi Code Section 9-1-41. But the Minors' assertion is misplaced.

¶117. Under Section 9-1-41,

In any action in which a court is authorized to award reasonable attorneys' fees, the court shall not require the party seeking such fees to put on proof as to the reasonableness of the amount sought, but shall make the award based on the information already before it and the court's own opinion based on experience and observation[.]

Miss. Code Ann. § 9-1-41 (Rev. 2019). First, this statute confirms that the court, not the jury, is authorized to award attorneys' fees and that the attorneys' fees must be reasonable. *Id.* Second, this statute assumes that the court's decision is based on admissible, credible evidence from which to award attorneys' fees. Lastly, this statute allows the court to make an award based on "the court's . . . experience and observation[.]" *Id.*

¶118. Here, the trial court did not "make the award." *Id.* Instead, the trial court allowed the jury to consider and award attorneys' fees, and it did so without any findings as to reasonableness. Additionally, as previously discussed, the trial court did not have admissible, credible evidence to consider in support of the Minors' claim for attorneys' fees. Moreover, the trial judge who presided over the second trial was not the same trial judge who presided over the first trial. Thus, the trial court was unable to make an award of attorneys' fees from the first trial "based on the information already before it and the court's own opinion based on experience and *observation*[.]" *Id.* (emphasis added).

¶119. Certainly, Section 9-1-41 must be considered in conjunction with Mississippi Rule of Professional Conduct 1.5 and the ***McKee*** factors.

The reasonableness of an attorney's fee award is determined by reference to the factors set forth in Rule 1.5 of the Mississippi Rules of Professional Conduct. . . . In addition to these factors, [under Section 9-1-41,] the Legislature gives additional guidance to courts in determining the reasonableness of attorney's fees by instructing the court to 'make the award based on the information already before it and the court's own opinion based

51

on experience and observation[.]

*Cook*, 832 So. 2d at 486-87. Thus, while the Minors may not be required to put on proof as to reasonableness, the reasonableness of an attorneys' fee award must be determined by the court before attorneys' fees can be awarded. *Id.*

### Whether the trial court erred by denying the Minor Estate's post-trial motion for attorneys' fees.

¶120. The majority finds "that the trial court erred by denying the Estate's post-trial motion for attorneys' fees." Maj. Op. ¶ 58. The majority then undertakes its own reasonableness analysis and renders an award of $4,500,000 in attorneys' fees. Maj. Op. ¶ 59.

¶121. It is interesting that the majority, in this issue, bases its decision on the exact reasons that were ignored in the previous section regarding the award of attorneys' fees as extracontractual damages. Now, incredibly, the majority finds (1) that admissible, credible evidence is present to support the award of attorneys' fees, (2) that there is evidence to allow the trial court to award attorneys' fees under Mississippi Rule of Professional Conduct 1.5 or the *McKee* factors, and (3) that the trial court, not the jury, erred by failing to award attorneys' fees. Maj. Op. ¶¶ 51-60.

¶122. Although the majority did not consider or address whether the award of $457,858.89 in attorneys' fees was supported by credible evidence, it now finds that it is required to consider whether the $4,500,000 in attorneys' fees requested by the Minors is supported by credible evidence. Maj. Op. ¶ 52.

¶123. Moreover, the majority now finds reasons to consider the reasonableness of the award of attorneys' fees under Mississippi Rule of Professional Conduct 1.5 and *McKee*. Maj. Op.

¶ 52. Based on its fact finding as to post-trial attorneys' fees, the majority assumes the role of the trial court and awards $4,500,000 in attorneys' fees with little explanation.

¶124. Nevertheless, the majority is correct that "attorneys' fees *may* be awarded *in addition* to punitive damages. *See* [*Cook*], 832 So. 2d at 486." Maj. Op. ¶ 57 (emphasis added). The key to this rule of law is that the trial court "may" award attorneys' fees. *Cook*, 832 So. 2d at 486. Here, the trial court considered an award of posttrial attorneys' fees *and chose not to award attorneys' fees*. This decision was properly within the discretion of the trial court and should be affirmed. *See* **Peterson**, 412 So. 2d at 1173 ("We will not reverse the trial court on the question of attorney's fees unless there is a manifest abuse of discretion in making the allowance.").

¶125. I cannot join my colleagues in this extraordinary decision to act in the role of the trial court. Not only does the majority reverse the trial court's denial of post-trial attorneys' fees, but it also renders an award of attorneys' fees in the amount of $4,500,000. The majority does not cite one Mississippi case that supports this decision.

¶126. Respectfully, I cannot agree with the majority's award of $4,500,000 in attorneys' fees. I would affirm the trial court's discretionary decision to not award post-trial attorneys' fees.

## II. Punitive Damages

### Whether the $10,000,000 punitive damages award should be reversed and rendered, or, alternatively, reduced.

¶127. Mississippi Code Section 11-1-65(1)(a) (Rev. 2019) provides:

(1)  In any action in which punitive damages are sought:

(a) Punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.

¶128. The trial court found that "a reasonable jury could come to the conclusion by clear and convincing evidence that . . . [USAA] acted in reckless disregard to the *rights of the insured*" and therefore submitted the issue of punitive damages to the jury. But the question is not whether USAA acted with gross negligence that evidences a willful, wanton, or reckless disregard for the insured's rights. Instead, as the statute's plain language indicates, the question is whether USAA acted with "gross negligence which evidences a willful, wanton or reckless disregard for the *safety of others*." Miss. Code Ann. § 11-1-65(1)(a) (emphasis added).

¶129. There is no evidence that USAA acted in reckless disregard for the Minors' safety. The Minors do not contend that USAA adjusted their insurance claim in some manner that affected their safety, let alone evidenced a willful, wanton, or reckless disregard for their safety. Instead, the harm, if any, was purely economic. *See Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 791 F. Supp. 2d 1026, 1049 (D.N.M. 2011) (reducing an award of punitive damages since "[t]he harm caused [wa]s purely economic as opposed to physical"); *see also State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003) ("'[T]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct.' We have instructed courts to determine the reprehensibility of a defendant by considering

54

whether: *the harm caused was physical as opposed to economic*; the tortious conduct evinced . . . a *reckless disregard of the health or safety of others*[.]" (emphasis added) (citation omitted)).

¶130. The Minors argue that case law allows an insured to recover punitive damages for the reckless disregard for the insured's rights. But the cases relied on by the Minors predate the Legislature's 2004 amendment to Section 11-1-65.

¶131. The Legislature first enacted the statute limiting the grounds for punitive damages in 1993. H.B. 1270, Reg. Sess., 1993 Miss. Laws ch. 302 § 2(1)(a). The 1993 enactment provided that the statute "shall not apply to: Contracts; Libel and Slander; or Causes of action for persons and property arising out of asbestos." *Id.* § 2(2). The statute was amended in 2002, and the Legislature kept the language exempting "Contracts; Libel and slander; or Causes of action for persons and property arising out of asbestos" from the punitive damages limits. S.B. 19, 3d Extraordinary Sess., 2002 Miss. Laws ch. 4 §§ 6(1)(a), 6(5).

¶132. In 2004, as part of a significant tort-reform package, the Legislature struck the statutory language exempting "Contracts; Libel and slander; or Causes of action for persons and property arising out of asbestos." H.B. 13, 1st Extraordinary Sess., 2004 Miss. Laws ch. 1 § 4; *see also* Miss. Code § 11-1-65 amend. n. (Supp. 2004) (noting that 2004 amendment "deleted (5), which provided that subsections (1) and (2) did not apply to contracts, libel and slander, and asbestos actions"). This new public policy, effective September 1, 2004, applied to all causes of action filed on or after that date. H.B. 13, 1st Extraordinary Sess., 2004 Miss. Laws ch. 1, § 20.

¶133. Despite the 2004 amendment and the significant public policy change that it represents, judicial decisions have continued to use the "insured's rights" language when discussing punitive damages in insurance bad faith claims.[23]  As USAA notes:

> A Westlaw search for "insured's rights" returns 14 Mississippi appellate decisions that use the phrase after the amendment: *McCord v. Healthcare Recoveries, Inc.*, 960 So. 2d 399 (Miss. 2007); *United Am. Ins. Co. v. Merrill*, 978 So. 2d 613 (Miss. 2007); *U.S. Fid. & Guar. Co. of Miss. v. Martin*, 998 So. 2d 956 (Miss. 2008); *Fonte v. Audubon Ins. Co.*, 8 So. 3d 161 (Miss. 2009); *AmFed Cos., LLC v. Jordan*, 34 So. 3d 1177 (Miss. Ct. App. 2009); *Hoover v. United Servs. Auto. Ass'n*, 125 So. 3d 636 (Miss. 2013); *Minn. Life Ins. Co. v. Columbia Cas. Co.*, 164 So. 3d 954 (Miss. 2014); *Chapman v. Coca Cola Bottling Co.*, 180 So. 3d 676 (Miss. Ct. App. 2015); *Liberty Ins. Corp. v. Tutor*, 309 So. 3d 493 (Miss. Ct. App. 2019); *Johnston v. Nationwide Ins. Co.*, 291 So. 3d 410 (Miss. Ct. App. 2020); *Miss. Farm Bur. Cas. Ins. Co. v. Hardin*, 323 So. 3d 1034 (Miss. 2021); *Estate of Greenwood v. Montpelier US Ins. Co.*, 326 So. 3d 459 (Miss. 2021); *Thornhill v. Walker-Hill Envt'l & Zur. Am. Ins. Co. of Ill.*, 345 So. 3d 1197 (Miss. 2022); *Holloway v. Nat'l Fire & Mar. Ins. Co.*, 360 So. 3d 671 (Miss. Ct. App. 2023).

But these decisions rely on pre-2004 amendment cases and do not interpret or consider Section 11-1-65's plain language.

¶134. Section 11-1-65's plain language displaces the prior common law interpretations. Section 11-1-65(1)(a) clearly requires that in order for punitive damages to be awarded, the Minors must show by clear and convincing evidence that USAA "acted with . . . gross negligence which evidences a willful, wanton or reckless disregard for the *safety of others*[.]" Because there was no such evidence presented by the Minors, the award of punitive damages should be reversed and rendered.

***Whether the trial court committed multiple errors warranting***

---

[23] This is likely due to the fact that this issue has never been directly challenged.

***a new trial.***

¶135. As the majority notes, USAA asserts the trial court committed multiple errors warranting a new trial, including that the trial court erroneously instructed the jury that USAA's adjusters are charged with the knowledge of all records at all times. Maj. Op. ¶ 47.

¶136. "We review the decision to give or refuse a jury instruction for abuse of discretion." ***Pulliam v. State***, 321 So. 3d 1185, 1193 (Miss. Ct. App. 2020) (citing ***Newell v. State***, 49 So. 3d 66, 73 (Miss. 2010)). "[J]ury instructions must be considered together[.]" ***Newell***, 49 So. 3d at 73.

> In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found. There is no error if all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law.

***Id.*** at 73-74 (quoting ***Rubenstein v. State***, 941 So. 2d 735, 784-85 (Miss. 2006)).

¶137. Jury Instruction Number 6, which was offered by the Minors as Instruction P-2 and was given over USAA's objection, instructed the jury as follows:

> You are instructed that United Services Automobile Association (USAA) as an insurance company is charged with knowledge of what appears in its own records.

> In this case, USAA had in its underwriting department files documents and photographs with regard to 1995 and 2001 onsite inspections of the Minor home by USAA. USAA is therefore charged with knowledge of the entire contents of these and all other files in its possession.

Under this instruction, USAA's claims adjusters are charged with the knowledge of all USAA files, including decades-old underwriting files.

57

¶138. The majority finds the trial court did not abuse its discretion by giving the instruction because "the underwriting file and documents were in USAA's possession[.]" Maj. Op. ¶ 48. I disagree and find no support for this instruction.[24]

¶139. USAA asserts, and I agree, that an underwriter is very different from a claims adjuster. An underwriter focuses on risk assessment to determine whether an insurance policy should be issued. A claims adjuster, on the other hand, investigates, evaluates, and settles claims *after* an insurance policy has been issued.

¶140. The record reflects that at the time of Hurricane Katrina in August 2005, USAA stored its underwriting files separately from other files.[25] USAA's witnesses testified that the underwriting file was not part of the claims file or the IMS System and that the underwriting file was not automatically available to adjusters. According to USAA, an adjuster would only request the underwriting file if someone, like the insured, brought it to his or her attention. Thus, until Paul Minor referenced the underwriting file in his December 2006 letter, the USAA adjusters assigned to the claim did not know about the file.

¶141. USAA adjuster Will Carraway testified that he was not trained to request underwriting records when adjusting a property claim and that it was not common practice to request an underwriting file when adjusting a property claim. Notably, the Minors presented no evidence to the contrary. Indeed, the Minors failed to show that such training was common in the industry or that insurers were required to know about, retrieve, and rely on the

---

[24] Neither the Minors nor the majority cite any authority for this instruction.

[25] The Minors' underwriting file was stored in hard copy at USAA's records center in Tampa, Florida.

underwriting files to adjust a property-loss claim years later.[26]

¶142.  In ***South Central Bell v. Epps***, the Court rejected the theory that a company can be liable for punitive damages when "inept" employees failed to review customer account records that were "easily accessible at the simple touch of a finger." ***S. Cent. Bell v. Epps***, 509 So. 2d 886, 893 (Miss. 1987).  In ***Epps***, a South Central Bell employee disconnected Epps's telephone service for unpaid charges despite the fact that South Central Bell's computer system, which was available to the employee, showed the account was current. ***Id.*** at 889.  Epps filed suit for the wrongful termination of her telephone services and sought both compensatory and punitive damages. ***Id.*** at 888.  The jury found in favor of Epps and awarded her $75,000 in compensatory damages and $3 million in punitive damages. ***Id.*** South Central Bell appealed. ***Id.***

¶143.  On appeal, the Court found as follows:

> [South Central] Bell retains exclusive control over their record keeping procedures. They necessarily must bear the burden and suffer the consequences associated with any mistake or errors made by their employees, regardless of whether such mistakes are caused by simple negligence or employee incompetence.
>
> . . . [W]e ultimately are led to conclude that [South Central] Bell terminated Mrs. Epps' service wrongfully. . . . As such, [South Central] Bell's actions resulted in a breach of [contract].

***Id.*** at 892.

¶144.  Although the Court found that South Central Bell breached its contract with Epps by

---

[26] It makes sense that such knowledge or reliance is not an industry standard since insureds would likely dispute attempts to pay losses based on out-of-date underwriting files that were not compiled for claim-adjustment purposes.

wrongfully terminating her telephone services, it reversed the punitive damages award. *Id.*

at 893. The Court explained that the employee's actions were "more the product of

oversight, inadvertence, or incompetence rather than the product of gross, callous or wanton

conduct manifesting a reckless indifference to the consequences of the[] act or the rights of

[South Central Bell's] subscribers." *Id.* The Court concluded:

> [W]e find that this was not a punitive damage case. There is no evidence to
> indicate that Bell was engaged in any deceptive or fraudulent practices. Nor
> can we say that their breach of the subscribers' contract was attended by such
> gross negligence or willful wrong so as to constitute an independent tort
> necessary to impose punitive damages. Although we are convinced that the
> disconnection was a result of employee incompetence, incompetence alone
> does not meet our criteria for the imposition of punitive damages.

*Id.* at 894.

¶145. Thus, while South Central Bell was charged with constructive knowledge of its

corporate records for breach-of-contract purposes, it was not charged with the same

knowledge for punitive damages purposes. *Id.*

¶146. Other jurisdictions have also rejected the notion that an insurer is automatically

charged with the knowledge of everything in its records. For instance, the United States

Court of Appeals for the Fifth Circuit has held that knowledge of the information in an

insurer's group hospitalization division could not be imputed to that insurer's underwriting

division. *Schrader v. Prudential Ins. Co. of Am.*, 280 F.2d 355, 361 (5th Cir. 1960). The

*Schrader* Court emphasized that it was "not company policy to check group policy claims

for information" when underwriting a new policy and that requiring this would be

"impracticable and costly[.]" *Id.* Additionally, the United States Court of Appeals for the

60

Eleventh Circuit noted that "[s]everal appellate courts have held . . . that information within the knowledge of one division of an insurance company is not chargeable to another department." *Middlesex Mut. Ins. Co. v. Levine*, 675 F.2d 1197, 1202 (11th Cir. 1982) (citing *Schrader*, 280 F.2d at 361; *Halverson v. United States*, 121 F.2d 420, 422 (7th Cir. 1941), *cert. denied*, 314 U.S. 695, 62 S. Ct. 412, 86 L. Ed. 556 (1941); *United States v. Depew*, 100 F.2d 725, 728 (10th Cir. 1938)).

¶147. The Minors suggest that Jury Instruction Number 6, if erroneous, amounts to harmless error because USAA, even after actual notice of the underwriting file in December 2006, still did not promptly consider the underwriting file and did not timely pay the contents claim. I disagree.

¶148. Jury Instruction Number 6 is highly prejudicial. The trial court instructed the jury that, as a matter of law, USAA had "knowledge of what appears in its own records." In other words, the jury was instructed that USAA was on notice of its stored underwriting records at all times before and after Hurricane Katrina in 2005. This knowledge was imputed to all adjusters working in Mississippi irrespective of company policy and industry standard. This was effectively a peremptory instruction directing jurors to reject USAA's defense, supported by undisputed evidence, that adjusters deployed to Mississippi did not know about the stored underwriting file and that it was not common practice to retrieve such files when adjusting claims. The Minors capitalized on this error in closing arguments telling the jury, "USAA set it up so that the left hand didn't know what the right hand was doing," "80 percent of what they needed was already in their underwriting file," and "I guarantee you that if that

underwriting file listed contents that w[ere] cheap and inexpensive and they could get off cheap, they would have found that underwriting file."

¶149. Mississippi law does not support Jury Instruction Number 6. When read as a whole, the jury instructions create an injustice and do not fairly announce the law of the case. *Newell*, 49 So. 3d at 73 (quoting **Rubenstein**, 941 So. 2d at 784-85). Consequently, the trial court abused its discretion by giving the instruction. This case should be reversed and remanded for a new trial without any consideration of Jury Instruction Number 6.

> ### *Whether the trial court erred as a matter of law by submitting the issue of punitive damages to the jury.*

¶150. As discussed, the trial court erred by giving Jury Instruction Number 6, and this case should be reversed and remanded for a new trial. On remand, in determining whether the issue of punitive damages should be submitted to the jury, the trial court should not consider the substance of Jury Instruction Number 6. There is nothing to support the instruction's implication that USAA's claims adjusters are charged with the knowledge of all USAA files, including decades-old underwriting files. As a result, such information should not be considered by the trial court in determining whether the case should be submitted to the jury on the issue of punitive damages.

### III.    Conclusion

¶151. For these reasons, I respectfully dissent. First, I would reverse and render the $457,858.89 award of attorneys' fees as extracontractual damages. Second, I would affirm the trial court's order that denied the Minors' post-trial motion for attorneys' fees based on the award of punitive damages. Third, I do not agree with and object to this Court's decision

to award the Minors $4,500,000 in attorneys' fees. Fourth, I would reverse and render the trial court's award of punitive damages or, alternatively, reverse and remand for a new trial for the trial court to consider the issue of punitive damages without consideration of the substance of Jury Instruction Number 6.

**MAXWELL, J., JOINS THIS OPINION IN PART.**